J. W. H. GOLDEN, *et al., vs.* CLINTON COCKRIL.

A chattel mortgage may be void for uncertainty as well as a mortgage of real estate.

The description of property in a chattel mortgage to be good, should contain either some hint which would have directed the attention of those reading it to some source of information beyond the words of the parties to it, or something which will enable third persons to identify the property, aided by inquiries which the mortgage indicates and directs, or a description which distinguishes the property from other similar articles.

A description in the words following "one hundred and twenty-four head of mules now in the territory of Kansas," and "one pair of claybank horses," *held* not sufficient.

A delivery or change of possession, either actual or constructive of chattels mortgaged, is essential to the validity of the morgage as against third parties.

The registration of a chattel mortgage in Platte county, Missouri, the residence of the mortgagor and mortgagee on chattels, at the time, in Kansas, is not, in an action in the State between the attaching creditor of the mortgagor and the mortgagee, equivalent to a delivery of the possession of the chattels mortgaged at the time thereof.

By the Court, BAILEY, J. Petition in error from first district court for Leavenworth county.

From the bill of exceptions the following facts appear, viz. :

On the 8th day of October, 1859, C. A. Perry, of Platte county, Missouri, executed to Clinton Cockril, of the same

county, a chattel mortgage upon "one hundred and twenty-four head of mules and one pair of claybank horses," with other personal property, to secure the payment of a debt due from said Perry to said Cockril, which mortgage was duly recorded in said county of Platte, according to the laws of Missouri.

On the 18th day of October, 1859, nineteen mules and one yellow pony, a part of the property so mortgaged to Cockril, was attached in Leavenworth county, Kansas, at the suit of Thomas C. Anderson, by D. A. Hook, deputy and under sheriff of J. W. H. Golden, sheriff of said county of Leavenworth.

Some time in September, previous to the attachment, the mules and pony attached had been left by Perry, after their return from Salt Lake, in charge of H. C. Branch, of Leavenworth county, and a contract had been entered into between Perry and Branch for wintering them. They remained in Branch's custody, under this arrangement, until they were attached, and Branch had received no notice of any change in the ownership.

The mortgage from Perry to Cockril was made in good faith, to secure the payment of a just debt of large amount, and was executed and recorded in all respects according to the requirements of the Missouri statutes.

In November, 1859, following the attachment of the mortgaged property, Cockril, the mortgagee, (now defendant in error,) commenced suit in Leavenworth county, Kansas, against the sheriff, Golden, his deputy Hook, and the attaching creditor, Anderson, to recover possession of the property attached, and on the 11th day of November, 1859, the nineteen mules and one yellow pony were taken out of the sheriff's custody, on an order of replevin, and delivered up to Cockril.

At the trial of the issue joined in this suit of replevin at the May term of the district court for Leavenworth county, 1862, counsel for Cockril offered in evidence to the jury the mortgage executed and recorded in Missouri, to which the counsel

for defendants, (now plaintiffs in error,) objected, but their objections were overruled by the court, and the ruling excepted to.

The plaintiff, Cockril, was then sworn as a witness, and testified that the property in dispute was a portion of the property included in the mortgage; that said property, at the time of the execution of the mortgage, was in Kansas, and there remained; that he did not receive the property at the time he took the mortgage, and never had it in his possession, &c., &c. All of which was confirmed by the testimony of Perry.

Defendants' counsel then moved the court to instruct the jury, as matter of law, as follows, to-wit:

First. If the jury believe, from the evidence, that, at the time the mortgage was executed in Platte county, Missouri, the property was in Leavenworth county, Kansas, that possession was not delivered to the plaintiff, and that the property was retained in the possession of Charles A. Perry, or Charles A. Perry & Co., in this county, either by themselves or their agents, and was so in their possession at the time it was seized under the order of attachment, then they must find for the defendants.

Second. That, if by the terms of the mortgage, the property was delivered, or was to be delivered to plaintiff, and if the jury believe, from the evidence, that the mortgagor, Perry, retained possession of the property and treated it as his own, then such acts were inconsistent with and contrary to the terms of the mortgage, and rendered it absolutely void as to creditors.

Third. "That a mortgage executed in Missouri upon personal property in Kansas, at the time, and which remains there, and is taken under an order of attachment against the mortgagor in favor of his creditors, will not hold the property as against such attaching creditors, unless possession of the property was given to the mortgagee, Cockril, and was retained by him."

Fourth. That the defendant, Anderson, had a right, under his attachment, to seize the mortgaged property, and that the purchaser at the sale would get whatever interest C. A. Perry, or C. A. Perry & Co. had in the property, subject to claims of the alleged mortgagee.

All of which instructions the court refused to give to the jury, and the refusal to charge was excepted to by defendants' counsel, but charged them in substance, as follows, viz. :

"That personal property followed the domicil of the owner, and that a conveyance by it or contract in relation to it was good by the law, if the domicil was good anywhere ; that, under the Missouri statute of fraudulent conveyances, possession of personal property need not be delivered to the mortgagee to make the conveyance valid, if the mortgage was acknowledged or proved and recorded in the county in which the mortgagor resided at the time of its execution, as the statute directs, and that if they were satisfied from the evidence that Perry had executed and delivered to Cockril a mortgage in good faith upon the property in questiion, to secure a *bona fide* indebtedness by C. A. Perry & Co., or C. A. Perry, which indebtedness was unsatisfied at the time of bringing this action, and that that mortgage was acknowledged or proved, and recorded in the county of the mortgagor, as conveyances of land are required by such Missouri statute, and that such conveyance antedated the attachment suit of Anderson, &c., then the lien of plaintiff was anterior and better than the defendants', and they should find for the plaintiff."

The jury, under these instructions of the court, found a verdict for the plaintiff, Cockril, assessing his damages for the taking of the property at one cent. Whereupon the defendants' counsel moved to set aside the verdict and for a new trial, on the ground of misdirections to the jury, and refusal to charge, as requested. Which motion was overruled. Whereupon the defendants bring their petition in error upon bill of exceptions, filed in this court.

Golden and others *v.* Cockril.

The petition in error sets forth six distinct errors, to-wit:

First. The court erred in the instructions given to the jury an the trial.

Second. In refusing to give to the jury the instructions which the said plaintiffs in error prayed the court to give.

Third. The facts set forth in the petition are not sufficient to maintain the aforesaid action against the plaintiffs in error.

Fourth. The court erred in allowing the mortgage from C. A. Perry to Cockril to be read in evidence to the jury against the objections of the plaintiffs in error.

Fifth. The court erred in overruling the motion made by the plaintiffs in error for a new trial.

Sixth. That said judgment was given for the sain defendant in error, Clinton Cockril, where it should have been given for said plaintiffs in error, according to the law of the land.

From this statement of facts, it will be readily seen that the only question presented for decision is, whether this mortgage from Perry to Cockril, executed in Missouri, in accordance with the statutory requirements of that state, is operative to create a lien upon the property in Kansas, valid against a subsequent attachment, sued out by creditors of Perry, in pursuance of the laws of Kansas.

While it seems to be conceded that the mortgage was made with the *bona fide* intention of securing the debt specified in the condition thereof, its validity is impeached upon the following grounds:

First. That it was inoperative and void as to the property in dispute, from the loose, vague and indefinite description of the chattels intended to be conveyed by it.

As to the degree of certainty and exactness of description requisite in a chattel mortgage, the authorities seem to be somewhat at variance, though all concur in holding that such a mortgage may be void for uncertainty as well as a mortgage of real estate.

In the case of *Bullock vs. Williams*, (16 *Pick.* 33,) chief justice Shaw remarks that "the articles mortgaged must be of such a nature and so situated as to be capable of being specifically designated and identified by written description."

In Canada the statute provides, (20 *Vic. C.* 3, § 4,) that "a mortgage of chattels shall contain such efficient and full description thereof that the same may be thereby readily and easily known and distinguished."

And in the case of *Rose vs. Scott,* the court of Queen's bench of upper Canada had occasion to apply these provisions of the statute to a chattel mortgage, containing the following description, to-wit:

"Seven horses, three lumber wagons, one carriage, one pleasure sleigh, all the household furniture in possession of the party of the first part, and being in his dwelling house; all the lumber and logs in and about the saw mill and premises of the said grantor; all the blacksmith tools now in the possession of the said party of the first part, six cows and four stoves."

The court held that nothing but the furniture, lumber and logs could pass by the mortgage, as none of the other articles were described in such a way as to enable a person to ascertain their identity by inspection or inquiry, and distinguish them from other similar articles.

In the case of *Montgomery vs. Wight*, (8 *Mich.*, 143,) the description being "one sorrel horse," the supreme court of Michigan thought the description insufficient to pass the property under this Canadian statute—the object of which, it was said, was to "prevent creditors and purchasers from being deceived by ambiguous descriptions, the allowance of which would encourage fraud, and render it easy to substitute one chattel for another." The court added that "any hint which would have directed the attention of those reading the mortgrage to any source of informatton beyond the word of the parties to it, would at least have been much more satisfactory.

Golden and others *v.* Cockril.

As this horse had a *name*, that would have furnished a ready description." (*Montgomery vs. Wight at supra.*)

In the case of *Lawrense vs. Evarts*, (7 *Ohio S. R.*, 194,) the question was, whether three unfinished machines could pass by a mortgage, in which they were described as "planeing machines," in a certain shop.

Mr. justice Swan, delivering the opinion of the court, remarked that a mortgage of "*all the stock, tools and chattels,* belonging to the mortgagor, in and about a wheelwright shop, occupied by him," is not void as to creditors, and the mortgage`, may show, by parol evidence, what artic'es were in and about the shop when the mortgage was made. (*Harding vs. Colborn,* 12 *Metc.,* 333; *Morse vs. Pike,* 15 *N. H. R.,* 529; *Burdett vs. Hunt,* 25 *Maine,* 419; *Wolf vs. Dorr,* 24 *Maine,* 104; *Wilson, et al., vs. Merch. Ins. Co.,* 4 *Metc.,* 506.)

He then says, "the principal to be deduced from these cases is, that any. description which will enable third persons to identify the property, aided by inquiries, which the mortgage itself indicates and directs, is sufficient."

Here, then, we have three rules by which to judge of the sufficiency of the description in the case at bar.

The description of the property in question in Perry's mortgage, is "one hundred and twenty-four head of mules, ncw in the territory of Kansas," and "one pair of claybank horses."

The property claimed by defendant in error, by virtue of this mortgage, and delivered to him by virtue of the order of replevin, is described by him in his affidavit, upon which the order is obtained, as follows, viz.:

"Nineteen mules, most of them branded with the letter P, and all of them were worked to Salt Lake City and back the present year," and "*one yellow pony, with some white about him.*"

We are forced to the conclusion that when tested by either of these rules, the description of the mules is far less full, definite and satisfactory than it might have been made, and that of the pony is fatally defective.

If the mules had been described in the mortgage as they were in the affidavit, or as being all the mules the mortgagor had in said territory of Kansas, or as the same then in the care of H. C. Branch, in Leavenworth county, Kansas, third persons might, in the language of judge Swan, been able to identify the property, aided by the inquiries which the mortgage itself would, in that case, have indicated and directed.

It does not appear how many other mules Perry had in Kansas at the time the mortgage was made, *but* he might have had a much larger number than he choose to include in the mortgage, and as there was nothing to distinguish those intended to be included in the mortgage from the rest, an indefinite amount of stock might, perhaps, have been shielded from the claims of creditors by the mortgage of a small part of them.

It is difficult to see how the "yellow pony, with some white about him," can be claimed under the description in the mortgage of "*one pair* of claybank horses." Though a "pony" is defined by Webster to be a "small horse," the terms horse and pony are not in common usage and acceptation, synonimous or convertable terms, but on the contrary, the term pony is used to distinguish from horses in general a peculiar breed, having well known and strongly marked characteristics. If the description in the mortgage of "one pair of claybank horses" was meant to include a "yellow pony, with some white about him," it must be deemed a singularly inapt and unsatisfactory description, nor is it aided in the slightest degree by the contest. The mules are referred to as being one hundred and twenty-four in Kansas, and four in Platte county, Missouri, but though the pony appears to have been in Kansas, it is not so stated in the mortgage. The expression, "a pair of horses," would, ordinarily, be understood to mean a matched pair, or at least a pair mated and used together, and the next articles mentioned in the mortgage are "one rockaway and the harness belonging to the same," tending to strengthen the supposition that the claybank horses were carriage horses, which ponies, ordinarily, are not.

Golden and others *v*. Cockril.

 Second. But it is further objected against the validity of the mortgage that while the instrument imports a delivery of the property upon its face, there was, in fact, no delivery or change of possession, either actual or constructive. That such delivery is essential to the validity of the mortgage as against third parties, is unquestionable.

Justice Gibson remarks that delivery of the subject matter of the contract is as requisite in the case of a mortgage of goods as it is in case of an absolute sale. (*Clow vs. Woods*, 5 *S. & R.*, 278.)

Justice Woodbury says: "In all cases of personal property mortgaged, the mortgagee ought to take possession, or place his lien on record *for notice to the world.*" (*Leland vs. Medora*, 2 *W. and Minn.* 103.)

And to the same effect chief justice Shaw, of Massachusetts:

"By the general rule of the common law upon a transfer of goods, whether absolute or conditional, as against third persons, there must be a delivery, and in general, also, the custody and possession of the goods must be retained by the vendee." (*Bullock vs. Williams*, 16 *Pick.*, 24.)

It is, however, well settled that in states where the statutes provide for the registration, filing or recording of such mortgages, such recording is equivalent to delivery; as, for example, in Maine, where it was held that: "Registration is a *substitute for delivery*, and a mortgage duly recorded is valid against all the world, though the mortgagor retain possession as before." (*Smith vs. Smith*, 11 *Shep.*, 555.)

So in Massachusetts:

"By our statute the registration of a mortgage of personal property is substituted for delivery of possession, and a mortgage duly executed and recorded, is effectual to pass the property described in it without any other act or ceremony." (*Shurtliff vs. Willard*, 19 *Pick.*, 211.)

Similar statutory provisions exist in most of the states of the union. (*See Hillard on Mortgages, vol.* 2, *Appendix.*)

This brings us to consider whether the recording of the Perry mortgage in Platte county, Missouri—being the county of the mortgagor's residence—can, as to property in Kansas, be considered as a substitute for and equivalent to the delivery of such property, and the continued change of possession which would otherwise be indispensable.

The chief object of registration is, unquestionably, to *give notice* to all the world, and especially to creditors of the mortgagor, of the existence of the lien.

It is now generally provided by the statutes of the several states that personal mortgages, like those of real estate, shall be publicly *registered* or *recorded*, in order to give them validity against any one but the parties themselves, unless the mortgagee take and retain possession of the property, in which case registration is dispensed with *because the purpose of it*—*notice of the incumbrance*—is accomplished in another way. (2 *Hillard on Mortgages*, 244.)

To the same effect chief justice Shaw remarks that " registration is required, as giving equal and perhaps greater notoriety to the transaction than delivery and retaining possession." (*Bullock vs. Williams*, 16 *Pick.*, 34.)

Such being the object and purpose of registration, can it be reasonably argued that the purpose is accomplished by the registration in this case ?

The property in dispute was, at the time of making and recording the mortgage, in Kansas, and parties in Kansas were, perhaps, dealing with and giving credit to the mortgagor from the knowledge that he possessed such property to which they might look for repayment. If the registration of Perry's mortgage in Platte county, Missouri, must be held to be notice to such creditors, because Perry lived in Platte county, then registration in St. Louis county, Missouri, or in any other county, in Maine, Florida, Texas or Oregon must be held a

equally valid as notice to creditors here, in case their debtors owning property here reside in those counties.

But the fact is too plain for argument that *such* registration would *not* be notice to creditors here in any beneficial sense.

But it is still contended for plaintiff in error that if the mortgage created a lien, valid by the laws of Missouri, it is valid here, and the cases *Kamage vs. Taylor* (7 *Ohio S. R.*, 134,) *Offutt vs. Flagg*, (10 *N. H.*, 46,) and *Martin vs. Hill*, (12 *Bourben*, 632,) are cited in support of the asserted claim.

In the cases of *Kanaga vs. Taylor* the court held that where Gregory, residing in New York, purchased of Kanaga a piano, for which he paid in part, and gave a chattel mortgage upon the piano for the balance, which mortgage was recorded as required by the terms of New York, and afterwards Gregory removed to Ohio and pledged the piano to one Moore, who in turn sold it to Taylor, the defendant, without notice of incumbrance. The court held that Kanaga was entitled to recover of Taylor, by virtve of his mortgage, the amount due to him on the piano, from Gregory, and in support of their decision, the court, (*Bowen, J.*,) use the following language, viz.:

" Holding this instrument then as the plaintiff did, as a legal and valid one, by the law in force where he obtained it, he was entitled to enforce it ; but as the power to do that had been cut off by the removal of the property beyond the jurisdiction of the state, it was proper for him to sue in the courts of this state, and to derive the same relief by his action as if he were pursuing a remedy where the contract was made." (*Kanaga vs. Taylor*, 7 *Ohio S. R.*, 141-2.)

Without deeming it necessary to controvert this reasoning, it is sufficient for our present purpose to remark that the case of *Kanaga vs. Taylor* may be distinguished from the one at bar, from the fact that in the former the property mortgaged

was at the time of the mortgage in the state and county where the mortgage was recorded ; was subject to the jurisdiction of that state, and hence, a valid lien was created by the registration ; while in the case at bar, the property being in Kansas, while the mortgage was executed and recorded in Missouri, we must concede to the legislature of Missouri an extra territorial force and efficiency, not claimed in *Kamage vs. Taylor,* for the legislature of New York, in order to support the validity of the lien here claimed.

So in the case of *Offutt vs. Flagg,* (10 *N. H. R.,* 46,) where it is held that "a mortgage made out of the state, which is valid according to the laws of the state in which it is executed, and the property is afterwards removed to New Hampshire, no registration is necessary."

Upham, J., remarks : " *The property was there ;* the contracting parties were there, and on every principle the *lex loci governs.*" (16 *N. H, R.,* 46.)

In *Martin vs. Hill,* (12 *Barbour,* 631,) where a yoke of oxen had been mortaged in New York and afterwards removed by the mortgagor into Vermont for a temporary purpose, and there attached for a debt of the mortgagor, the courts of New York held the mortgage valid as against the attachment.

But in all these cases it will be seen that the property was, at the time of the mortgage, within the limits of the state under whose law it was recorded, while in the case at bar the record was made in Missouri while the property was, and for a long time had been, in Kansas.

But the supreme courts of Vermont and Michigan, in direct opposition to the doctrine of the three cases above cited, have decided that a chattel mortgage, executed and recorded according to the laws of another state, where there is no change of possession, will not be valid as against the claims of attaching creditors, if the property is removed into those states. (*Farnsworth vs. Shepard,* 6 *Vt.,* 521 ; *Woodward vs.*

Golden and others *v.* Cockril.

*Gates,* 9 *Vt.,* 361; *Gates vs. Gaines,* 10 *Vt.,* 349; *Lynde vs. Melvin,* 11 *Vt.,* 686; *Kendall vs. Sampson,* 12 *Vt.,* 515; *Rockwood vs. Collamer,* 14 *Vt.,* 141; *Skiff vs. Solace,* 23 *Vt.,* 279; *Montgomery vs. Wight, at supra.*)

We will only remark further, that at the time this mortgage was executed and recorded in Missouri, there was no statute in force in Kansas providing for the registration of chattel mortgages here—the Missouri statutes of 1855 having been repealed, (*see acts of* 1859,) and that the statute subsequently enacted expressly provides that such mortgages of property belonging to non-residents shall be recorded in the county in which the property is. (*Kansas Laws* 1860.)

Ordered by the court, that the judgment rendered in this cause in the court below be reversed, and the cause remanded for a new trial.