No. 22,418.

C. E. EMICK, *Appellant,* v. J. F. SWAFFORD, Individually and as Sheriff, etc., and THE CHICAGO LUMBER AND COAL COMPANY, *Appellees;* JOHN FERGUSON, *Appellant.*

SYLLABUS BY THE COURT.

1. CHATTEL MORTGAGE—*Mutual Mistake—Reformation in Replevin Action.* In a suitable case a chattel mortgage may be reformed for mutual mistake, in an action of replevin based thereon.

2. SAME — *Executed in Duplicate — Mistake — Reformation.* Where a chattel mortgage is executed in duplicate, the mortgagor signing both papers, one being filed with the register of deeds, the other, which is retained by the mortgagee, may be reformed by the restoration of words printed in the blank form through which a line had inadvertently been drawn, such reformation being made effective as to execution creditors as well as to the mortgagor.

3. SAME—*Each Duplicate Copy an Original.* In the situation stated each paper is an original, and the instrument filed with the register could be enforced without a formal correction of the other.

4. SAME—*Property Sufficiently Described.* A chattel mortgage is not void for want of a more definite description, which describes the property covered as all the personalty of every kind owned by the mortgagor, and shows that it is in his possession and in a certain county.

5. REPLEVIN—*Demurrer to Petition Erroneously Sustained.* Inasmuch as the sustaining of a demurrer to the petition in a replevin case is held to have been erroneous, there is no occasion for reviewing the refusal of the court thereupon to inquire into the right of the defendants to a return of the property.

Appeal from Cloud district court; JOHN C. HOGIN, judge. Opinion filed July 10, 1920. Reversed.

14—107 Kan.

*Homer Kennett, Olin Hunter,* and *Tom Kennett,* all of Concordia, for the appellants.

*Park B. Pulsifer, Charles L. Hunt,* and *Clyde L. Short,* all of Concordia, for the appellees.

The opinion of the court was delivered by

MASON, J.: An execution against John Ferguson was levied upon three mares and a colt as his property. C. E. Emick brought replevin against the sheriff, claiming to be entitled to the property under a chattel mortgage. Later the mortgagor and the execution creditor were also made defendants. The plaintiff obtained possession, and no redelivery bond was given. The execution of the mortgage was denied under oath. The trial of the case was begun and the plaintiff offered in evidence an instrument partly printed and partly typewritten signed by Ferguson and corresponding to the one pleaded, except that a pencil line drawn through a part of the printed matter which was not appropriate to the purpose had been extended so as to cover the words "do hereby sell and mortgage unto." An objection to its admission on account of this defect was sustained. The plaintiff after an interval asked and was given five days in which to amend his petition, the jury being discharged. An amended petition was duly filed, to which a demurrer for want of facts and for misjoinder was sustained, and the plaintiff and the mortgagor appeal, the appeal being resisted by the sheriff and execution creditor.

The amended answer asked for a reformation of the mortgage based upon these allegations with reference to its execution:

"That in executing the same a piece of carbon paper was inserted between two blank printed forms of a mortgage in which were blanks to be filled in, and that the data as to the notes secured, and other data was filled in said mortgage, and that in attempting to make said printed form conform to the contract of parties a lead pencil line was inadvertently and by mutual mistake and the mistake of the scrivener drawn through the words 'do sell and mortgage unto' printed on said form, said lead pencil line partially obscuring said printed words on the outside copy of said mortgage. That said mortgage was executed in duplicate originals by the use of said carbon paper and the impressions on both papers were made at the same time. That on the inside copy on which the carbon impression was made the lead pencil line was drawn

Emick v. Swafford.

just above the edge of the words 'do sell and mortgage unto' printed on said form. That said carbon impression was duly signed by said Ferguson at the same time said outside copy was signed, and was also witnessed by Adelbert Buckley, and that the first duplicate original of said mortgage was retained by plaintiff and the other duplicate original, that is the one with the carbon impression on was filed for record in the office and was duly recorded in the office of the Register of Deeds. . . . That plaintiff did not discover until on or about the 28th day of September, 1918 [the day the trial was begun], that said lead pencil line obscured the said words on said outside or exposed duplicate original. That said defendant Ferguson and plaintiff mutually intended to execute a chattel mortgage in which said words were not stricken out and that said mortgage was duly signed while both parties thereto were under the impression and understood that said words had not been obscured."

1. Although the reformation of a chattel mortgage in what was otherwise a purely legal action for its enforcement was allowed in *Stewart v. Falkenberg,* 82 Kan. 576, 109 Pac. 170, the appellees question the propriety of such a proceeding and suggest that in that case the question of misjoinder of a suit in equity with a law action based on tort was not considered or discussed. We see no basis for an objection to the procedure followed, nor any way in which the rights of the defendants could be prejudiced thereby. The statute permits the joinder of legal and equitable causes of action and defenses. (Civ. Code, §§ 88, 97, Gen. Stat. 1915, §§ 6979, 6989.) In code states the practice of reforming an instrument in the same action in which its enforcement is sought by a legal remedy has been specifically recognized. (34 Cyc. 964; *Taylor State Bank v. Ewald,* 27 N. D. 606; *Delaware Ins. Co. v. Hill,* [Tex. Civ. App.] 127 S. W. 283. See, also, 23 R. C. L. 356, note 16.)

2. The contention is made that even if the mortgage might properly be reformed as between the mortgagor and mortgagee, the reformation should not be given any force as to the appellees because their rights had accrued while the instrument was defective. There is no possible way, however, in which the appellees could have been misled to their disadvantage by the defect, because the record showed a complete mortgage. By reason of that situation it was competent for the court to permit the reformation to be made effective as to them. It is true that the position of a creditor who seeks to seize mortgaged chattels in satisfaction of his claim is different from that of a purchaser, in that his rights as against an unrecorded

mortgage are not affected by his having actual notice of its existence. Here, however, there was no want of record—the document on file gave the creditor legal notice of the plaintiff's claim, whether or not he had any other information concerning it.

3. Moreover, while it is doubtless proper that the inadvertent striking out of the words in the document retained by the mortgagee should be recognized and corrected, such action is a mere matter of form. Inasmuch as the mortgage was prepared and signed in duplicate there were two originals, and the document filed with the register of deeds could be treated as the mortgage and enforced as such. "It is well settled that, where a writing is executed in duplicate or multiplicate, each of ·the parts is the writing which is to be proved, because by the act of the parties each is made as much the legal act as the other." (*International Harvester Co. v. Elfstrom*, 101 Minn. 263, 266. See, also, *Enright v. Railway Co.*, 96 Kan. 546, 152 Pac. 629; 2 Wigmore on Evidence, § 1232; 17 Cyc. 517; *First National Bank v. Jamieson*, 63 Ore. 594.) In the case in which the language just quoted was used, the writing, including the signature, was produced in duplicate throughout by the use of carbon paper, but this was not true of the cases cited in its support. The situation here presented is not that of a contract supposed to be prepared in duplicate in which the two versions turn out to be dissimilar in respect to some material item, such as a number or amount. The extending of the pencil mark through the words "do hereby sell and mortgage unto," in the paper retained by the mortgagee could perhaps be disregarded as an obvious inadvertence, the real purpose of the instrument being readily ascertainable from the language that remained. At all events, the instrument as it stood was either a good chattel mortgage of the same effect as that on file, or it was of no legal force whatever; it was not a completed contract of a different import.

4. An objection is made to the validity of the mortgage as against the appellees on the ground that the property intended to be covered is not so described as to make the instrument enforceable as to them. The description, which follows a recital that the property was in the possession of the mortgagor, reads: "All my personal property· of every kind and nature."

A provision follows as to the effect of an attempt to remove it from Cloud county, carrying a necessary implication that it was then located there; so that the mortgage by its terms covered all the personal property owned by Ferguson, and showed that it was in his possession and in that county. (*Crisfield v. Neal,* 36 Kan. 278, 13 Pac. 272.) If the description had read "Three mares and a colt," and Ferguson had owned no other animals to which that description could apply, it would have been sufficient under the decision just cited, and under *Brown v. Holmes,* 13 Kan. 482, 492. There the conclusion reached was rested largely upon the fact that this court, in holding the description "one hundred and twenty-four head of mules, now in the territory of Kansas," to be insufficient, had said that if the property had been described as all the mules the mortgagor had in the territory, or as the same then in the care of H. C. Branch, in Leavenworth county, Kansas, "third persons might . . . have been able to identify the property, aided by inquiries which the mortgage itself would in that case have indicated and directed." (*Golden and others, v. Cockril,* 1 Kan. 259, 265, 266.)

"A mortgage of all the grantor's property of a certain kind in a specified locality is sufficient." (11 C. J. 461.)

That the property referred to belongs to the mortgagor is an element in its description. That he owns no other property with which that intended might be confused aids in its identification. A description of the mortgaged property as all the horses a man owned could be applied with more ease and certainty than if it covered only all over a certain age. That the mortgage covers all the mortgagor's personalty of every sort makes it easier rather than harder to determine whether a particular piece of property is included. If it belongs to him it is subject to the lien. Any limitation imposes the need for applying some further test. We conclude that the mortgage was not void for want of a more definite description.

5. The appellants by way of cross appeal complain of the refusal of the court upon the sustaining of the demurrer to the amended petition to proceed to inquire into their right to the possession of the property taken, in accordance with the statute. (Civ. Code, § 184, Gen. Stat. 1915, § 7076.) As one rea-

son for refusing to enter into the inquiry, the court stated that during the five days allowed the plaintiff to amend his petition the jurymen had been discharged from attendance, and no jury was present. In any event, inasmuch as the amended petition is held not to be demurrable, there can be no occasion for directing such an inquiry now.

The judgment is reversed, and the cause is remanded with directions to overrule the demurrer.