Argued March 22, re-argued July 9, reversed October 23, 1928.

## E. O. IMMEL, TRUSTEE, *v.* ALBANY IRON WORKS.

(271 Pac. 53.)

For appellant there was a brief and oral argument by *Mr. F. C. Heffron.*

For respondent there was a brief over the name of *Messrs. Hewitt & Sox,* with an oral argument by *Mr. H. H. Hewitt.*

BEAN, J.—This is an action for the conversion of personal property embraced in a trust deed executed by the Yaquina Harbor Lumber Company on October 1, 1920, in favor of a trustee to secure the payment of $233,000 in bonds issued by the mortgagor. The trust deed was recorded as a chattel mortgage in Lincoln County, Oregon, in November, 1920. The cause was tried by the court and a jury and a verdict rendered in favor of defendant. Plaintiff appeals.

A brief history of the matter, as contained in the brief, is as follows: In 1919 the Fischer-Story Lumber Company owned and operated a lumber business in Lincoln County consisting of sawmill sites, log-

ging outfits and other property. The sawmill was situated on Depot Slough, in the City of Toledo, on what was known in Toledo as the old mill site. In the summer of 1919 the mill was destroyed by fire. The machinery of the burned mill was left where it fell, at the time of the fire, on the mill site. In a shed on this mill site was stored some used mill machinery. After the mill burned the Fischer-Story Lumber Company purchased a new site adjoining the old one, and other property held by it, and commenced the erection of a new mill. In the fall of 1920 they sold all their property to the Yaquina Harbor Lumber Company, which executed the trust deed, or mortgage.

In this mortgage, among other property specifically described and designated in the mortgage, in "paragraph (a)," was a tract of land purchased after the fire on which the new unfinished mill was situated. Following a list of described lands in Lincoln County, contained in the mortgage, the personal property contained therein is described substantially as follows:

"All and singular the mill, buildings and mill machinery, tools and appliances of every nature belonging to or connected with that certain sawmill now located upon the lands described in paragraph (a) above, and all mill machinery and equipment, and all rights to mill machinery, and/or equipment of every kind and nature now upon said premises, or hereafter to be acquired or used in connection with or as a part of the milling operations conducted at said mill site, or on the property described in paragraph (a) above, and also all workshops, sheds, fixtures, works, plants, machinery, engines, boilers, tools, implements, equipment, supplies, appliances and apparatus now owned and/or used in connection with the business and plants of the company, including said sawmill and also all logging outfits,

appliances and apparatus now owned by and/or used in connection with the said milling or logging plants of Lumber Company, as well as that hereafter to be acquired, which said property now owned is described as follows'': (Here follows a long list .of machinery and other personal property.) In this list is contained "machinery and equipment, old." Also a definite description of the rewound motor as follows: "(1) 75 horsepower 865 R. P. M. rewound motor."

Following the list are the two following paragraphs:

"Also any and all property, real personal and/or mixed (except lumber and manufactured timber products) of every kind and description, now owned or hereafter to be acquired by said Yaquina Harbor Lumber Company or its successors in interest or assigns."

"All of the property of every nature of said Lumber Company, whether now owned or hereafter to be acquired, shall be held and deemed to be within the terms hereof and shall be subject hereto as fully and as completely as though all of such property were particularly described and set forth herein."

The Yaquina Harbor Lumber Company failed to perform any of the conditions of the mortgage and was in default on November 30, 1920. G. W. Ford was put in charge of all of the property of the Yaquina Harbor Lumber Company by that company. In January, 1921, pursuant to instruction of the mortgagor, Ford sold the old machinery from the burned mill and that stored in the shed on the mill site to the Albany Iron Works for $1,877.78. During that month the Albany Iron Works shipped it by rail to Albany. Thereafter Ford sold to defendant a 75 horse-power rewound motor for $650. Also a small motor for $100. The bill of sale from the

Yaquina Harbor Lumber Company to defendant purports to sell to defendant "all of the old machinery of the Fischer-Story Lumber Company now in the yard."

On May 2, 1922, the trustee obtained a decree in the Circuit Court for Lincoln County foreclosing the trust deed and mortgage and ordering the mortgaged property, except that taken by defendant, sold to pay the bonds. After such sale there remained a deficit in the judgment of some $270,000. After the old mill burned the Fischer-Story Company had a 75 horse-power motor rewound and upon its return to Toledo stored it in the electric light plant, where it remained until sold by the Yaquina Harbor Lumber Company's representative to defendant.

The defendant pleads in its answer, in effect, that it purchased the property described in plaintiff's complaint for a valuable consideration without any knowledge or notice, either actual or constructive, of any lien of the trustee by mortgage, or otherwise, and that the defendant was an innocent purchaser of said property for value.

The main question in the case is, whether or not the mortgage, which was duly recorded, was constructive notice to the defendant, or whether the mortgage sufficiently described the property in question.

■ The unquestioned law is that a chattel mortgage to be effectual, as against third persons, must point out the subject matter of it, so that a third person by its aid, together with the aid of such inquiries as the instrument itself suggests, may identify the property covered: Jones on Chattel Mortgages (5 ed.), § 55.

The rule is plainly stated in 11 C. J., page 457, Section 78, in the following language:

"As against third persons the description in the mortgage must point out its subject matter so that such persons may identify the chattels covered, but it is not essential that the description be so specific that the property may be identified by it alone, if such description suggest inquiries or means of identification, which, if pursued, will disclose the property conveyed. This rule is based on the maxim, That is certain, which is capable of being made certain. So a description is sufficient if it may be aided by parol proof and the property covered by the mortgage identified."

In *Emick* v. *Swafford,* 107 Kan. 209 (191 Pac. 490, 491), it is disclosed that a description in a chattel mortgage reads as follows: "all my personal property of every kind and nature." The court there said as shown at page 492:

"That the mortgage covers all the mortgagor's personalty of every sort makes it easier rather than harder to determine whether a particular piece of property is included. If it belongs to him it is subject to the lien. Any limitation imposes the need for applying some further test."

In 11 C. J., page 461, Section 81, we read:

"The scarcity or plentitude of chattels similar to those mortgaged is an element to be considered in determining the sufficiency of the description of the chattels covered by the mortgage, and the nonexistence of other property to which the terms of the mortgage could apply frequently renders valid a description in a mortgage which otherwise would be too indefinite."

We take from a note in 11 C. J., page 459, the following:

"It is generally, or at least often, impossible to describe property in a mortgage or other instrument so particularly that a stranger can select it from other property of the same kind or class without the aid of facts which do not appear in the instrument itself; and, therefore, any description in a mortgage is sufficient which will enable a stranger, aided by inquiries which the instrument itself suggests, to identify the property." *Mendenhall* v. *Kratz,* 14 Wash. 453, 457 (44 Pac. 872).

■ The inquiry, therefore, is, did the mortgage which describes all mill machinery and equipment now upon said premises or used in connection, or as a part of the milling business and plants, and machinery, engines, tools, logging outfits used in connection with the mill located on lands described in paragraph (a) "and also any and all property, real, personal and/or mixed (except lumber and manufactured timber products) of every kind and description now owned, or hereafter to be acquired by said Yaquina Harbor Lumber Company, or its successors in interest or assigns," cover the personal property purchased by defendant?

If the inquiry or means of identification of the property as the mortgage suggests are such that the defendant by reading the mortgage and making the suggested inquiry would be informed of the property conveyed by the mortgage, then it was its duty to ascertain whether or not the Yaquina Harbor Lumber Company owned the property which it purchased, or whether it was used in connection with the sawmill business, or plants of that company.

The testimony indicated that the personal property in controversy was transferred by the Fischer-Story Lumber Company to the Yaquina Harbor Lumber Company and that the same was owned by the

latter company at the time of the execution of the mortgage and a large part thereof was in an old shed on the old mill site where the former mill was burned, near the present mill site, and also a 75 horse-power rewound motor, and that all of it belonged to or was used in connection with the sawmill buisness and plants of the mortgagor, and which the defendant loaded upon the cars and shipped to Albany. It does not appear that the Yaquina Harbor Lumber Company had any other personal property except that described in the trust deed.

■ Parol evidence may be employed not to furnish a description, but to aid, if possible, the description of chattels given in a mortgage in the identification of the personal property mortgaged: *City National Bank* v. *Goodloe-McClelland Com. Co.*, 93 Mo. App. 123, 131; 11 C. J., page 459, note.

■ In the operation of a sawmill and use of a logging outfit it would be practically impossible to describe all the machines, tools and apparatus specifically in a trust deed or mortgage so that the property could be identified by a stranger by such description alone, and a general description which suggests inquiries, which if pursued will disclose the property mortgaged, is sufficient. The defendant had, or must be presumed to have had, the information contained in the mortgage when it purchased the property, and it was incumbent upon such purchaser to make inquiry as to whether or not the property was used in connection with the milling business plants or logging business of the Yaquina Harbor Lumber Company. The defendant evidently considered that the property was owned by that company, as it purchased the same from that concern. And a little inquiry would have disclosed that the Yaquina Harbor Lum-

ber Company purchased the same from the Fischer-Story Lumber Company and owned it at the time of the execution of the mortgage.

The defendant apparently failed to examine the record of chattel mortgages in that county or to make any inquiry in regard to the property purchased of a company which was not then a going concern and took the chattels from within the shadow of the sawmill and plant to which it belonged.

Under the testimony the defendant had constructive notice of the lien of plaintiff when it bought the property. A reading of the mortgage plainly shows that the Yaquina Harbor Lumber Company had mortgaged all the property of every description that it owned in Lincoln County to secure the bonds.

In *Wilson* v, *Boyce,* 92 U. S. 320, 325 (23 L. Ed. 608), a statutory mortgage given to secure bonds covered ''the road and property of the several companies so receiving them.'' At page 325 of the Report we read thus:

''The generality of its language forms no objection to the validity of the mortgage. A deed 'of all my estate' is sufficient. So a deed 'of all my lands wherever situated' is good to pass title. *Johnson* v. *De Laney,* 4 Cow. (N. Y.) 427; *Pond* v. *Berg,* 10 Paige (N. Y.), 140; 1 Atk. on Conv. 2. A mortgage 'of all my property,' like the one we are considering, is sufficient to transfer title.''

The court charged the jury that the recording and indexing of a chattel mortgage in the office of the county clerk in a county gives constructive notice to everybody of the existence of such a mortgage, but the court qualified the instruction by the following language:

"Constructive notice, in order to be effective, however, is of the character indicated by my instructions with respect to the rights of an innocent purchaser. If there has been a purchase of mortgaged property under such circumstances and at such a place that a reasonably prudent person would not be apprised of the fact it was mortgaged property and even though he was reasonably diligent he had no notice of it, he would be an innocent purchaser."

The plaintiff excepted to the qualification quoted.

Upon the proposition of an innocent purchaser, the court charged the jury as follows:

"But if the circumstances of the purchase, if there was a purchase, by the defendant, were such that notwithstanding the property it purchased was actually described in the trust deed, still the subject matter of the purchase was at a different place and under circumstances such as would not put a reasonable person upon inquiry, which, if such inquiry had been pursued with reasonable diligence would have led to discovery of the *existence of the mortgage,* then the defendant would be an innocent purchaser; * * " (Italics ours.)

The court also instructed the jury as follows:

"The defendant alleges that it purchased—the Albany Iron Works purchased the property in question in good faith and without notice of the mortgage. The burden is upon the defendant to show the alleged purchase. The Albany Iron Works alleges it purchased the property, and the burden is upon the Albany Iron Works to show you the purchase. If that has been shown, however, the plaintiff holds the affirmative upon the issue with respect to the alleged notice, either constructive or actual, of plaintiff's alleged title * * " to which instruction defendant excepted.

This instruction was erroneous.

■ In *Ayre* v. *Hixson,* 53 Or. 19 (98 Pac. 515, 133 Am. St. Rep. 819, Ann. Cas. 1913E, 659), where the defendant claimed to be an innocent purchaser of personal property for value and had no knowledge or notice, either actual or constructive, that plaintiff had or claimed any mortgage or claim or lien upon sheep which were described in plaintiff's mortgage, Mr. Justice EAKIN, as shown on page 27 of the Report said: "This is a necessary allegation under the provisions of Section 5633, B. & C. Comp., above mentioned, and the burden is upon defendants to prove it": *Haines* v. *Connell,* 48 Or. 469, 474 (87 Pac. 265, 88 Pac. 872, 120 Am. St. Rep. 835); *Rhodes* v. *McGarry,* 19 Or. 222 (23 Pac. 971); *Jennings* v. *Lentz,* 50 Or. 483 (93 Pac. 327, 29 L. R. A. (N. S.) 584); *Laurent* v. *Lanning,* 32 Or. 11 (51 Or. 80). The burden was upon defendant to show that it purchased the property without any knowledge or notice either actual or constructive of the lien created by the trust deed.

The jury must have understood from the charge of the learned trial judge that although the property purchased by it from the Yaquina Harbor Lumber Company was actually described in the trust deed, yet if the purchase was under such circumstances as would not put defendant upon inquiry, which if properly pursued would have led to the discovery of the *existence of the mortgage,* then the defendant would be an innocent purchaser. This seems to be the plain purport of the instruction and practically nullifies the effect of the recordation of the trust deed.

■ Stress appears to be laid in the charge upon the discovery of the mortgage. It was the duty of the defendant to examine the chattel mortgage record, and ascertain in regard to the mortgage. The ques-

tion for the jury to determine, to a large extent, was whether or not the personal property taken by defendant and described in the mortgage was used in connection with the sawmill business or plant of, or owned by, the Yaquina Harbor Lumber Company at the time of the execution of the trust deed or mortgage.

The charge seems to have left to the jury the matter of construing the mortgage. It is contended by defendant that none of the personal property specifically described in the list contained in the mortgage, and above referred to, was taken by defendant. We do not so understand the testimony. The 75 horse-power motor was specifically described in the list and we think the testimony tended to show that the defendant took and converted it to its own use.

The defendant criticises the description of the personalty contained in the complaint but such description seems to have been sufficiently plain, for the defendant to plead in its answer that it purchased the property described in the complaint from the Yaquina Harbor Lumber Company so that obviates any difficulty in regard to the designation of the chattels in the complaint. The defendant admits taking the property. This practically leaves only the question of whether the defendant had constructive notice of plaintiff's claim of lien when it purchased the ''junk'' and machinery.

The judgment of the trial court should be reversed and a new trial granted. It is so ordered.

REVERSED.