### FIRST STATE BANK OF KINGSVILLE v. FIRST STATE BANK OF GEORGE WEST et al.

#### No. 8476.

Court of Civil Appeals of Texas. San Antonio.

Oct. 22, 1930.

Gordon Boone and Felix A. Raymer, both of Corpus Christi, for appellants.

Tarlton & Lowe and H. S. Bonham, all of Corpus Christi, for appellees.

FLY, C. J.

This is a suit by the First State Bank of George West, Tex., against the First State Bank of Kingsville, Tex., and J. E. Garrett, to recover damages arising from the conversion of certain cattle on which plaintiff claimed to have a valid chattel mortgage. The First National Bank of Mathis intervened in the case, claiming a prior mortgage on the cattle.

The First State Bank of Kingsville and Garrett filed pleas of privilege to be sued in Kleberg county. These pleas were overruled, and a trial of the cause had before the court, without a jury, resulting in a judgment in favor of the First National Bank of Mathis as against the First State Bank of Kingsville, Tex., for $540, and in favor of said national bank as against the First State Bank of George West, Tex., for $744; and in favor of the First State Bank of George West for $1,309.33, as against the First State Bank of Kingsville.

The First State Bank of Kingsville, Tex., and the First State Bank of George West, Tex., perfected their appeal to this court.

There are conclusions of fact and law as well as a statement of facts in the record.

The facts show that the Kingsville bank lent about $8,000 to one M. L. Nixon to buy certain cattle, and that to secure the amount Nixon executed his promissory note and a mortgage on the cattle bought by him; the cattle being identified in the mortgage as being branded with what is known as a lazy S brand. Afterwards, with the knowledge and implied consent of the Kingsville bank, the cattle were removed from Kleberg county, of which Kingsville is the county seat, to Live Oak county, for better pasturage. In the county last named Nixon borrowed money from the George West bank, giving as security his note, signed also by one Goodman, and a mortgage on part of the same cattle already mortgaged to the Kingsville bank. Nixon, with thrifty enterprise and skillful manipulation, worthy of a better cause, proceeded to Mathis in San Patricio county, and obtained a loan from the national bank of Mathis. The different banks claiming the same cattle, or portions thereof, described as having different brands.

The national bank of Mathis placed its mortgage on record ahead of the other two mortgages and was followed by the George West bank and then the Kingsville bank. The mortgage first recorded by the Mathis bank described three horses and then included "all other cattle, etc.," owned by Nixon. The mortgage did not give the sex, age, color, or brands on any of the cattle. The Mathis bank had a second mortgage, dated April 2, 1921, which was purported to be recorded on March 9, 1921, an impossible date for such registration. That mortgage, while describing the cattle, recited that they were in San Patricio county, and was filed for record in Live Oak county. Again, on September 26, 1921, after the mortgages of the other two banks had been recorded, the Mathis bank filed another mortgage on cattle with certain brands, and sought to correct irregularities and defects in the other mortgages, especially in the one dated April 2, 1921. The cattle, with the consent of the George West bank, were placed in a pasture partly in Live Oak, McMullen, and Duval counties. And were moved from that pasture to one in Kleberg county, but, with the consent of the Kingsville bank, that part of the cattle claimed by the George West bank were moved back to the pasture partly in Live Oak county, where they were sold by the agent of the George West bank, and the proceeds credited on the debt due by Nixon to that bank. The agent of the George West bank was permitted to take all the cattle described in the mortgage of the George West bank, as well as twenty-two others not belonging to it, which were returned to the pasture in Kleberg county. What became of the cattle not appropriated by the George West bank is not disclosed by the evidence. These are the salient facts in the case, so far as can be ascertained from the confused statement of facts.

The first mortgage filed by the Mathis national bank gave no description of the cattle sought to be covered by it. They were described as "all other cattle owned by me" in Live Oak county. There was no way to identify the cattle, and, as the words "all other cattle" followed the description of three horses, it might be surmised that "all other cattle" were horses. The prime object of recording mortgages is to give notice of the claim of the mortgagee against certain property, and, in order to constitute a lien, the property sought to be bound must be described with sufficient accuracy as to indicate the property. Solinsky v. O'Connor (Tex. Civ. App.) 54 S. W. 935; Hamilton National Bank v. Harris (Tex. Civ. App.) 260 S. W. 318. As between the bank and Nixon the description might have been capable of being made certain by evidence aliunde, but that rule would not prevail as to a record intended to give notice to subsequent creditors or purchasers. The bank evidently did not deem it sufficient, for it afterwards secured another mortgage, which had a better description; but it was not effective as against the other banks because the cattle were located by the mortgage in San Patricio county, and it should have been recorded in that county and not in Live Oak county. This is the mortgage that is shown to have been recorded before it was executed. The discrepancies and defects were sought to be corrected in a mortgage of date September 26, 1921, after the mortgages of the other banks had been recorded in Live Oak county. The testimony was insufficient to show that the First National Bank of Mathis had a lien on the cattle superior to that of either of the other two banks.

If the Kingsville bank converted any of the cattle to its own use, the evidence fails to disclose it. How many cattle were converted, if any, their description, color, brands, and location are not shown, and the judgment for $540 in favor of the Mathis bank and for $1,304 in favor of George West bank cannot be sustained.

There is too much uncertainty, inconsistency, and confusion in the testimony to rest a judgment upon nearly $2,000 against the state bank of Kingsville and against the George West bank for $744, or any other sum.

The case has not been developed and should be tried again.

The judgment is reversed, and the cause remanded.