SHANTILAL BROTHERS, Ltd., Plaintiff

v.

KMST WHOLESALE, Inc., Defendant

NELSON & ROBERTSON PTY., Ltd., AMERICAN SAMOA
GOVERNMENT, DIOCESE OF PAGO PAGO,
and AFOA L.S. LUTU, Intervenors

High Court of American Samoa
Trial Division

CA No. 87-88

September 7, 1990

Before REES, Associate Justice, AFUOLA, Associate Judge, and
MATA'UTIA, Associate Judge.

Counsel: For Plaintiff, Gata E. Gurr
       For Intervenor Nelson & Robertson, John L. Ward II
       For Intervenor Afoa L.S. Lutu, Charles V. Ala'ilima

On Motion for Reconsideration:

      Intervenor Nelson & Robertson Pty., Ltd. moves for
reconsideration of our holding that plaintiff Shantilal Brothers, Ltd., is
entitled to the proceeds of a judicial sale of certain property belonging to
the defendant. This holding was based on our finding that intervenor's
chattel mortgage did not contain "a description of the specific article [or]

articles . . . mortgaged" within the meaning of A.S.C.A. § 27.1510(c). Plaintiff, a judgment creditor without actual notice of the chattel mortgage, was therefore entitled to execute its judgment by seizing and selling the property to which the mortgage ostensibly applied. Opinion and Order issued June 5, 1990, at p. 6; *see* A.S.C.A. § 27.1510.

Intervenor has cited authorities for the proposition that most United States jurisdictions, prior to the enactment of the Uniform Commercial Code, enforced "general" mortgages even against third parties without actual notice thereof. The rationale was that a mortgage applying to *all* of a person's property, or to all property within a certain class, necessarily provided (constructive) notice with respect to every particular item owned by that person. Such a description, notwithstanding the absence of specificity or detail, was therefore held sufficient to identify the item in question. *See, e.g., Bennett v. Green*, 119 S.E. 620 (Ga. 1923) ("[a]ll of the machinery, equipment, stock in trade, and all other assets . . ." held sufficient). In contrast, a general description pertaining only to *some* property within a given class ("one bay mare, two mare mules, one horse mule") would be insufficient, since the mortgagor might or might not own other property within the class. *See id.* at 622. *See also Murphy Hotels Corp. v. Central National Bank Savings and Trust Co.*, 18 F.2d 719 (6th Cir. 1927) ("all the furniture and equipment"); *In Re Oliver C. Putney Granite Corp.*, 14 F.Supp 31 (D. Md. 1936) ("all the tools, machinery . . . ."); *First National Bank of Panama City v. First National Bank of Chipley*, 106 So. 422 (Fla. 1925); *Emick v. Swafford*, 191 P. 490 (Kans. 1920) ("[a]ll my personal property of every kind and nature")*Childress v. First State Bank of Barnhart*, 264 S.W. 350 (Tex. App. 1924) ("[a]lso all other cattle, sheep . . . .").

Other cases, however, held that a general reference to all of a person's property or to all property of a certain class did not constitute a "description" of any particular item. *See, e.g., U.S. v. United Aircraft Corp*, 80 F. Supp 52 (D. Conn 1948) ("all parts, engines, equipment and accessories" held insufficient); *Simonson v. McHenry*, 92 P. 906 (Colo. 1907) ("all bedding, dishes, cooking utensils, together with all things, both useful and ornamental" too general to give third parties adequate notice of the subject property); *Farmer's & Merchant's Bank v. Stockdale*, 96 N.W. 732 (Iowa 1903) ("all other personal property I now own, or in the future may acquire"); *First State Bank v. First State Bank*, 32 S.W.2d 378 (Tex. App 1930) (holding insufficient the description "all other cattle" as incapable of giving notice to subsequent creditors).

The task before us, moreover, is not to determine what was the majority rule at common law with respect to general mortgages, or what the best judge-made rule would be. Rather, it is to enforce a particular statute. Our statute, unlike some of those construed by cases from other jurisdictions, requires not just that the mortgage contain some language sufficient to put third parties on inquiry, but that it contain a "description" of the "specific" article or articles mortgaged. The language in intervenor's mortgage apparently intended to apply to items such as those sold by plaintiff was as follows: "All of Mortgagor's furniture, machinery, apparatus, appliances, tools, supplies, materials, trade and other fixtures and equipment, including automotive equipment, now owned or hereafter acquired . . . ." While this language is arguably a "description" of sorts, it certainly does not contain a description of any "specific" article or articles, as our statute requires. Indeed, a reference to "all" of a general class of things would appear to be the very opposite of a "description" of a "specific" thing.

Intervenor appeals for a liberal construction of the statute on the ground that plaintiff, like the intervenor itself, is a business entity who lent money to defendant rather than an individual who purchased some mortgaged item. Aside from the difficulty we would have in fashioning a rule that would make general mortgages specific enough to bind creditors but too general to bind purchasers, this hardly appears to be a case in which law is at odds with equity. The record reflects that intervenor made massive extensions of credit to the defendant at a time when it was already deeply in debt to the plaintiff. A few months later--- at a time when there is no evidence that plaintiff had actual knowledge of intervenor's dealings with the defendant---plaintiff brought its claim to judgment. Our mortgage recordation statute creates a narrow exception to the rule that a debtor's property is the pledge of his general creditors. If intervenor had complied with the statute in every particular, its claim would have trumped that of plaintiff even though plaintiff's claim was first in time and was first brought to judgment. Not having complied with the statute, intervenor must take its place in line.

Finally, intervenor argues that even if a general mortgage is insufficient to bind third parties without notice, it is binding on plaintiff because "the Court records in this case clearly reveal [that] Plaintiff had received notice of the Chattel Mortgage when it filed for its second Writ of Execution on December 1, 1989." On the contrary, the earliest record evidence we can find of plaintiff's actual knowledge of intervenor's mortgage is a facsimile message from intervenor's counsel to a collection agent for plaintiff, dated about seven weeks after the writ of execution.

105

It refers to a previous discussion but does not say when this occurred. In any event, the general rule appears to be that notice of an unrecorded mortgage, given to a creditor who has already "fastened his lien upon th ⁄ property by judgment," comes too late regardless of whether a writ of execution has issued. *See G. Osborne, Handbook on the Law of Mortgages* § 211 at 376 & n.63 (2d ed. 1970), and authorities cited therein.

Intervenor does make one telling criticism of our opinion. Contrary to what we may have implied, the general rule against mortgages of after-acquired real property embodied in A.S.C.A. § 37.1003 contains an important exception for cases in which the property to be acquired is described in the mortgage document. The problems posed by general mortgages on the one hand, and mortgages of after-acquired property on the other, are related but distinct. Having held that the present mortgage does not contain a description of any of the specific articles that were seized and sold pursuant to plaintiff's writ of execution, we need not decide whether the rule of A.S.C.A. § 37.1003 should be applied by analogy to personal property, and whether, if so, that rule presents a second ground for the invalidity of the mortgage.

The motion to reconsider is denied.