ELLEN KAUFMAN, BY BRIDGET KAUFMAN (NEXT FRIEND), DEFENDANT IN ERROR, v. SAMUEL BUSH, PLAINTIFF IN ERROR.

Submitted July 10, 1903—Decided November 16, 1903.

1. Discrepancies between the testimony of the witnesses called by a plaintiff cannot avail the defendant upon a motion to nonsuit.
2. Where there is testimony competent to prove that a child five years of age, who had started to cross a highway at a public

crossing in full daylight, was run down after going only four or five feet from the sidewalk by a horse which, when the plaintiff left the sidewalk, was seen approaching the crossing at a high rate of speed from a point somewhere about the middle of the block, there was no error in the trial court in refusing to non-suit the plaintiff (the child) or in leaving to the jury the question whether or not the driver, when he approached the crossing, was using reasonable care to observe its condition and to have his horse under such speed and control as the conditions observable by him required of a prudent driver.

On error to the Hudson Circuit Court.

For the plaintiff in error, *Edward A. & William T. Day.*

For the defendant in error, *Alexander Simpson.*

The opinion of the court was delivered by

GARRISON, J. This is an action brought by an infant, aged five years, to recover damages for being run down by defendant's vehicle upon a public highway. The gravamen is the careless management of defendant's horse, driven by his servant. The case went to the jury and judgment went against the defendant, who has brought this writ of error, contending that the plaintiff should have been nonsuited, or that a verdict for the defendant should have been directed, each of which motions was made and denied.

The plaintiff called but a single witness to testify as to the occurrence—Annie Quinn, a child of thirteen, who was in charge of the plaintiff. The driver of the team, who was called by the plaintiff to prove the defendant's ownership, was permitted to be cross-examined as to the manner in which the collision occurred, and thereupon gave a version of it that flatly contradicted the testimony of Annie Quinn in that respect. This discrepancy, however, could avail the defendant nothing upon his motion to nonsuit. The trial judge could not ignore the testimony of one of the plaintiff's witnesses in favor of that given by another, or pass upon their conflicting claims to credibility. The motion has the effect

of a demurrer to so much of the testimony as is favorable to the plaintiff, admitting its verity in point of fact for the purpose of denying its sufficiency in point of law. The motion to direct a verdict in the present instance presented the plaintiff's case in precisely the same aspect. For the purpose of each of these motions the facts to be dealt with were that the plaintiff, in full daylight, started to cross a public highway upon which the defendant's team was being driven. The point was a public crossing at the junction of two streets, and when the plaintiff was about leaving the sidewalk the defendant's team, which was approaching the crossing at a high rate of speed, seemed to the witness, Quinn, to be half a block away, although, in view of her other testimony, this was an exaggerated estimate, so far as the exact distance was concerned. When the plaintiff had got between four and five feet from the sidewalk, which she had just left, she was struck by the forefeet of the defendant's horse. From these facts one legitimate inference would be that the plaintiff had begun to cross the highway at a public crossing before the defendant's team had engaged in the same attempt and while it was sufficiently distant to have avoided the collision but for either the rate of speed at which it was progressing, or for the lack of sufficient control by the driver over his horse, or from the inattention of the driver to the conditions upon the crossing that he was approaching. As to the speed at which the horse was coming, Annie Quinn, who upon her examination-in-chief had testified that it was coming fast, was, upon cross-examination, led upon two occasions to testify that the horse was running. This was some evidence bearing upon the conduct of the driver. That the horse had not, from fright or otherwise, got beyond the control of the driver, is testified to by the driver himself, who said that the horse was gentle, and who gave other evidence from which the fact that he was controlling the horse was the only possible inference. The part of the street in which the collision took place, namely, within four or five feet of the curb, the fact that it was at a public crossing near a corner, and in full daylight,

are all circumstances bearing upon the duty of the driver and his alleged negligence with respect to it.

If from this testimony the jury found, as they might, that the plaintiff had reached the crossing first and was using it at a time when the driver of the approaching vehicle ought to have seen her, and could, by exercising proper care over a horse that was under proper control, have either stopped or turned aside so as to avoid running her down, a case of negligence was sufficiently made out. The dangerous character of public crossings, the rule that gives the person who has commenced to cross a priority of right, and the serious consequences that must flow from the neglect of drivers to approach such crossings circumspectly and in reasonable control of their horses, are all involved in determining the degree of care that would absolve a driver from negligence, when, in point of fact, he has run down a pedestrian at a public crossing.

The age of the plaintiff, while it does not, *per se,* alter the rule by which the negligence of the driver is to be gauged, is a circumstance to be taken into consideration in measuring the sort of care he was exercising, and in determining what inferences should be drawn from the other facts respecting the accident.

At the close of the plaintiff's case, and at the end of all of the testimony, the jury might legitimately have found substantially these facts. The case was so left to them by the charge of the trial court. There was, therefore, neither in the refusal to grant a nonsuit nor in the refusal to direct a verdict, any error on the part of the trial court.

The judgment of the Circuit Court will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, GARRISON, FORT, GARRETSON, HENDRICKSON, PITNEY, SWAYZE, BOGERT, VOORHEES, VROOM, GREEN, GRAY. 14.

*For reversal*—None.