HARDIE, Appellant, *v.* PETERSON et al., Respondents.

(No. 6,504.)

(Submitted October 3, 1929.   Decided December 3, 1929.)

[282 Pac. 494.]

(150)

*Messrs. Harris & Hoyt,* for Appellant, submitted an original and a reply brief; *Mr. G. C. Hoyt* argued the cause orally.

*Mr. J. Miller Smith, Mr. Paul W. Smith* and *Mr. David R. Smith,* for Respondent E. W. Conrad, submitted a brief; *Mr. David R. Smith* argued the cause orally.

*Mr. W. W. Black* and *Mr. T. H. MacDonald,* for Respondents other than E. W. Conrad, submitted a brief; *Mr. MacDonald* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an action in conversion to recover the reasonable value of 954 feet of oil and gas well casing of the alleged value of $1,800. The cause was tried to the court sitting with a jury. At the conclusion of plaintiff's evidence the court sustained motions for nonsuit interposed by the several defendants and accordingly entered judgments of dismissal and for costs. The plaintiff has appealed from the judgments.

When the case was called for trial, the court, over objections by plaintiff, permitted the filing of amended answers on behalf of all defendants. This ruling is assigned as error by plaintiff.

An application to amend a pleading is addressed to the discretion of the trial court, and, unless there has been a clear abuse of discretion, the action of the court will be sustained on appeal. Here the plaintiff made no application for a continuance and made no suggestion that he was not prepared to proceed to trial on the issues presented by the amended answers. Under such circumstances he is not in a position to assert that the trial court abused its discretion in allowing the amended pleadings to be filed. (*Sandeen* v. *Russell Lumber Co.,* 45 Mont. 273, 122 Pac. 913; *Callan* v. *Hample,* 73

Mont. 321, 236 Pac. 550; *Wandel* v. *Wandel*, 76 Mont. 160, 248 Pac. 864.)

Plaintiff contends that the evidence presents a prima facie case for the jury and that it was error to sustain the motions for nonsuit as to each and all of the defendants.

The plaintiff testified: That he is the owner of the casing in question, and that he never bartered or sold it to anyone. That on September 1, 1926, Moulton approached him and asked if he would loan the casing to the well known as the Broderick well. He said: "My agreement with Mr. Moulton regarding the loan of this casing was that I would loan that casing for use in the well for a period not to exceed thirty days, and that it was to be returned to me in good condition at a location I might name when called upon, or after the completion of the well." Pursuant to this arrangement, the casing was taken from his possession and hauled to the Broderick well. That it has not been returned, though demand had been made of attorney Black for its return and from Mr. Edwards and Dr. Spear. On cross-examination, he said he personally had no transactions with any of the defendants in the case; that a conversation took place in the office of attorney Harris in which either Conrad or M. W. Edwards admitted that the casing belonged to plaintiff and that he was entitled to payment from somebody.

W. E. Burk testified that he is a drilling contractor and did some work on the well in question in repairing and cleaning it at the request of defendant Dr. Spear. He said Dr. Spear intimated that each party (meaning thereby Mr. Edwards, Dr. Spear, and their associates) would pay their proportion of the expense.

Moulton testified that defendants Peterson and M. W. Edwards talked with him in August, 1926, relative to renting some casing. He made arrangements to loan them the casing in question here, providing they would be through with it in thirty days. He got the casing from plaintiff. He stated, "The agreement between Mr. Hardie and myself was that he loaned the casing to me for thirty days to loan these people, to

let these people have it. That was agreed to by the plaintiff.''
Peterson looked the casing over and said it was all right, that
he would take it and deliver it in thirty days; that if the
witness had to have casing sooner and they were not through
with it they would try to deliver him the same kind of casing.
Peterson paid him for the use of the casing by assigning
a forty-acre tract, cornering the forty-acre tract that the
well was on. The witness paid nothing to plaintiff for the
use of the casing.

J. B. Peterson testified that he made the arrangements
with Moulton for the casing in question. That he originally
obtained the oil lease from Broderick covering the land on
which the well was drilled. He subsequently assigned the
lease to Conrad and Edwards, who drilled the well in which
the casing in controversy was used. His arrangements were
with Conrad, and he told Conrad that the casing could be
had from Moulton, and ''in the event it was a dry hole they
was to pull it out and deliver it, and if it was a commercial
well they was to pay for it.'' The witness said he stated to
Moulton that he was acting for Conrad.

E. W. Conrad testified that he was associated with M. W.
Edwards and a number of others in drilling the well; he and
Edwards were acting together as a trustee, handling the funds;
that the well turned out to be a producer of gas in commercial
quantities.

M. W. Edwards testified that he was associated with Conrad
in drilling the Broderick well; the relationship was one of
trusteeship; there was no written trust agreement; that de-
fendant Ruth M. Edwards is the owner of a one-half interest
in the lease.

The record also contains a copy of the original lease by
Broderick to J. B. Peterson, trustee, a copy of an assignment
of lease by J. B. Peterson, trustee, to E. W. Conrad and M. W.
Edwards, reserving an overriding royalty interest, a copy of
an assignment by Conrad and Edwards, a copartnership, to
East Chicago Oil Association, of an overriding royalty in-
terest, copies of assignments of overriding royalty interests

by R. M. and M. W. Edwards to Dr. Spear, trustee, and a copy of an assignment of a one-half interest in the oil and gas lease by M. W. Edwards to R. M. Edwards. There was also evidence showing the value of the casing.

It will be seen that the evidence offered by plaintiff's witnesses is in many particulars conflicting.

The plaintiff invokes the rule often stated by this court ██ that, in considering a motion for nonsuit, the evidence must be viewed in the light most favorable to him. Defendants contend that, since the plaintiff called the defendants as his witnesses, he was bound by their testimony. There are numerous decisions of this court which seem to support the defendants' contention. Among them may be cited the following: *Sommerville* v. *Greenhood,* 65 Mont. 101, 210 Pac. 1048; *Tebay Land & Livestock Co.* v. *Hastie,* 64 Mont. 509, 210 Pac. 605; *Cook* v. *MacGinniss,* 72 Mont. 280, 233 Pac. 129; *State* v. *Richardson,* 63 Mont. 322, 207 Pac. 124. In these and perhaps in other cases the statement is made that a party is bound by the testimony of his own witnesses. This statement, however, must be accepted with some qualifications. A party producing a witness is not allowed to impeach his credit by evidence of his bad character, but, under the express provisions of our statute, he may contradict him by other evidence. Section 10666, Revised Codes 1921, provides: "The party producing a witness is not allowed to impeach his credit by evidence of bad character, but he may contradict him by other evidence, and may also show that he has made at other times statements inconsistent with his present testimony, as provided in section 10669." Hence, if a plaintiff may contradict his own witness by other evidence, then such other evidence should be available to him in considering the motion for nonsuit.

· The rule is well established that, if there is a conflict in the evidence arising from discrepancies between testimony of witnesses called for plaintiff, a nonsuit is improper if some of the evidence supports the plaintiff's case. (38 Cyc. 1558, note 28; *Kaufman* v. *Bush,* 69 N. J. L. 645, 56 Atl. 291;

*Franck* v. *Hines*, 182 N. C. 251, 109 S. E. 21; *Olds* v. *Hines*, 95 Or. 580, 187 Pac. 586, 588; *Henry* v. *Etowah Dredging Co.*, 141 Ga. 406, 81 S. E. 197; *Smith* v. *City of Rome*, 16 Ga. App. 96, 84 S. E. 734; *Lindquist* v. *Pacific Coast Coal Co.*, 81 Wash. 73, 142 Pac. 445; *Western & A. R. Co.* v. *Evans*, 96 Ga. 481, 123 S. E. 494, cited and quoted from in *Wilson* v. *Blair*, 65 Mont. 155, 27 A. L. R. 1235, 211 Pac. 289.)

The rule was stated in the *Olds Case,* above, which is typical of that announced in the others, as follows: ''We remember also that it is a binding principle that the plaintiff is entitled to the benefit of whatever his testimony tends to prove, although his witnesses may contradict each other, and that, if any reasonable construction of the evidence on his behalf, or any part thereof, shall fairly tend to show that he is entitled to recover, it is the duty of the court to submit the question to the jury.''

Hence, if according to the credible testimony of any of plaintiff's witnesses, he has made out a cause of action, the case should have been submitted to the jury even though other witnesses for the plaintiff may have given a contrary version of the facts.

The record fails to disclose any evidence which makes out a prima facie case of conversion against the defendants Dr. Spear, trustee, and the East Chicago Oil Association. As to these defendants the record discloses that they had an interest in the well in question, but that interest was shown to be merely an overriding royalty interest in the oil and gas produced from the land. Neither of them has at any time exercised dominion over the well or the casing in question inconsistent with plaintiff's ownership. But it is contended by the plaintiff that the original answer filed on behalf of these defendants admits the conversion by them. This contention cannot be sustained. That answer was verified by defendant M. W. Edwards; but, if it be assumed that it was admissible against these defendants, still it does not admit a conversion as contended. It contains this denial: ''Deny each and every allegation therein, wherein said plaintiff alleges that

they have wrongfully and unlawfuly converted any property to their own use and deny any and all other allegations made in said paragraph III of plaintiff's complaint not herein otherwise admitted or qualified.'' It is plaintiff's contention that the answer denies the wrongful and unlawful conversion and is pregnant with the admission that the property was converted. The fallacy of this contention rests on the erroneous assumption that there may be a ''lawful'' conversion by one person of the property of another. The term ''conversion'' implies a ''wrongful'' exercise of dominion by one over the property of another. (*Haas & Howell* v. *Godby*, 33 Ga. App. 218, 125 S. E. 897; *Lininger Imp. Co.* v. *Queen City Foundry Co.*, 73 Colo. 412, 216 Pac. 527.) Furthermore, the denial in question here is not pregnant with the admission of any conversion. The phrase, ''wherein said plaintiff alleges that they have wrongfully and unlawfully converted any property to their own use,'' is merely descriptive of the allegations against which the denial was directed. It is no different than if there had been a general denial of each and every allegation in paragraph III not previously admitted or qualified.

It is contended by defendants that, since the well in which the casing was used is a commercial well, and since the casing is therefore a part of the realty (*Sunburst Oil & Refining Co.* v. *Callander*, 84 Mont. 178, 274 Pac. 834), an action in conversion will not lie. In 38 Cyc. 2015, it is said that ''trover will not lie for fixtures so long as they are attached to the freehold.'' The reasoning of many of the cases there cited proceeds upon the erroneous theory that a suit in conversion is one to recover specific chattels rather than damages for their wrongful conversion. It has been held that an action in conversion lies for wrongfully removing and carrying away railway rails, though before removal they constituted a part of the realty. (*Helena & Livingston S. & R. Co.* v. *Northern Pac. Ry. Co.*, 62 Mont. 281, 21 A. L. R. 1080, 205 Pac. 224.) And there seems to us no good reason why conversion should not lie to recover the value of chattels as damages for their con-

version even though they have been attached to and made a part of real property.

The rule contended for by defendants, though sustained by some authorities, is not universal. Thus, in 26 R. C. L., page 1107, it is said: ''The fact that personal property has become a permanent part of realty has generally been held not to prevent an action of trover from being maintained after such annexation for the value of the property converted.'' It is also the rule that parties by agreement may give to fixtures the legal character of realty or personalty at their option as between themselves, and that, when by such understanding the fixtures are to be regarded as retaining their character of personalty, they are properly regarded as the subject matter of an action in conversion. (38 Cyc. 2016, note 58; 26 C. J. 734; *Walker* v. *Schindel,* 58 Md. 360; *Stout* v. *Stoppel,* 30 Minn. 56, 14 N. W. 268; *Shapira* v. *Barney,* 30 Minn. 59, 14 N. W. 270; *Broaddus* v. *Smith,* 121 Ala. 335, 77 Am. St. Rep. 61, 26 South. 34.)

Here, according to the testimony of plaintiff, the casing was to be returned at all events at the end of thirty days or after the completion of the well. The action is not to recover the specific chattels as in a claim and delivery action, but is one to recover their reasonable value as damages. Under the facts of this case there is no merit in the contention that an action in conversion to recover the reasonable value of the casing is not the proper remedy of plaintiff. Were we to hold otherwise, it would not follow that plaintiff was properly nonsuited for having chosen the wrong remedy, for the complaint states facts sufficient to constitute a cause of action in the nature of an action on the case for damages, the measure of which is the value of the property in question. ''The character of the action will be judged from the nature of the grievance rather than from the form of the declaration.'' (*Samuell* v. *Moore Merc. Co.,* 62 Mont. 232, 204 Pac. 376, 378.) It would be a sad reproach upon our judicial system to permit the defendants under the facts in this case to say to plaintiff, ''we owe you the reasonable value of the casing but the courts

will not compel us to pay you because you should have sought to recover the reasonable value in some other form of action than in conversion.''

In determining whether a prima facie case of conversion was made out against the other defendants, we must consider the basic principles of law applicable to such an action. The ██ action is one in tort, unless there is a waiver of the tort, in which case the cause may be predicated upon an implied contract. (*Ivey* v. *La France Copper Co.,* 45 Mont. 71, 121 Pac. 1061.) Here the action is based upon tort. ''Any distinct act of dominion wrongfully exerted over one's property in denial of his right, or inconsistent with it, is a conversion.'' (*Interstate Nat. Bank* v. *McCormick,* 67 Mont. 80, 34 A. L. R. 721, 214 Pac. 949, 951; *Englehart* v. *Sage,* 73 Mont. 139, 40 A. L. R. 590, 235 Pac. 767; *Labbitt* v. *Bunston,* 84 Mont. 579, 277 Pac. 805.)

''Every person is liable in trover who personally or by agent ██ commits an act of conversion, or who participates by instigating, aiding, or assisting another, or who benefits by its proceeds in whole or in part.'' (38 Cyc. 2054.) To the same effect are *Brown & Sons State Bank* v. *Polen,* 132 Okl. 121, 270 Pac. 9; *Farmers' Grain & Supply Co.* v. *Atchison etc. Co.,* 121 Kan. 10, 245 Pac. 734; *Reliable Woodworking Co.* v. *Lindeman,* (N. J. Err. & App.) 143 Atl. 333; *Talich* v. *Marvel,* 115 Neb. 255, 212 N. W. 540; *Moler* v. *State Bank of Bigelow,* 176 Minn. 449, 223 N. W. 780; *Fitzwilliams* v. *Northwestern Trust Co.,* (Mo. App.) 10 S. W. (2d) 334; *Hazelton* v. *Holt,* (Tex. Civ. App.) 285 S. W. 1115.

It is not necessary to show that the defendant had at any time the actual possession of the property, to be held liable for its conversion. (26 R. C. L. 1110; *Hooser* v. *Carlton Bros. & Co.,* (Tex. Civ. App.) 288 S. W. 1095.)

''It may be stated as a general rule that one who receives, without right, the direct benefits of the personal property of another is liable in trover for the value of the same.'' (26 R. C. L. 1137.)

In the case of a bailment, as here, the bailor may sue the ▮▮▮▮▮ bailee in conversion when there has been a failure to redeliver the property in accordance with the terms of the contract of bailment. (6 C. J. 1152, 1153.) Where property has been rightfully obtained by defendant, a demand and refusal of delivery are essential before suit may be brought, either in conversion or claim and delivery. (*Duckett* v. *Biggs,* 57 Mont. 443, 188 Pac. 938; *Gates* v. *Powell,* 77 Mont. 554, 252 Pac. 377; *Viers* v. *Webb,* 76 Mont. 38, 245 Pac. 257.) But this rule can have no application here because, according to some of plaintiff's evidence, the bailment by its terms was to continue for thirty days only or until the completion of the well, and the defendants were not in the rightful possession of the property after the thirty days had elapsed and after the well was completed. The rule applicable here was stated in *Clapp* v. *Nelson,* 12 Tex. 370, 62 Am. Dec. 530, as follows: "Whether a demand should be made, in cases of bailment, previous to suit, depends upon the stipulations as to time for the return of the property. The return must be made at the time contemplated in the contract. If the property be detained beyond that period, no demand would be necessary in order to sustain an action for its recovery. It is not one of the obligations of the lender, that he shall at the expiration of the loan go after and bring back his property, but it is the duty of the borrower to restore it according to his stipulations." To the same effect are *Lay's Exr.* v. *Lawson's Admr.,* 23 Ala. 377, and 6 C. J. 1154, note 8. This principle of law was given recognition in the case of *Scott* v. *Waggoner,* 48 Mont. 536, L. R. A. 1916C, 491, 139 Pac. 454.

Applying these principles of law to the facts appearing of record here, the conclusion is inescapable that the plaintiff made out a prima facie case of conversion against the defendants J. B. Peterson, E. W. Conrad, M. W. Edwards and R. M. Edwards. There is evidence in the case showing that Conrad and M. W. Edwards, either as partners or as trustees for others, had charge of drilling the well in which the casing was used. The defendants Conrad, M. W. and R. M. Edwards,

at the time of the trial, owned an interest in the lease, and were entitled to the possession of the property covered by the lease, including the well and casing here involved; they were directly benefited by the casing as owners of the lease. Presumptively they were in possession and control of the casing. (*State* v. *Sawyer*, 71 Mont. 269, 229 Pac. 734.) There is evidence that J. B. Peterson negotiated for borrowing the casing and promised to return it in thirty days. The failure to do so makes him liable in conversion. (6 C. J. 1152.) The court erred in sustaining the motion for nonsuit as to these defendants.

Since we have held that no demand was necessary as a condition precedent to the commencement of the action, and since we have held that the original answer of the defendant Conrad does not admit a conversion, it becomes unnecessary to determine whether it was admissible in evidence against him under the facts presented, for upon another trial no useful purpose would be subserved in offering the original answer in evidence.

Error is predicated upon the refusal of the court to admit ▮▮▮ in evidence a certified copy of an assignment of a royalty interest made by Conrad and Edwards, a copartnership, and Ruth M. Edwards, to the East Chicago Oil Association, which was signed, ''Conrad & Edwards, a copartnership, by Marion W. Edwards, Ruth M. Edwards.'' The court excluded this evidence as to the defendants Conrad, M. W. Edwards and R. M. Edwards, and admitted it as to the other defendants. We think this exhibit should have been admitted as to the defendants Conrad and M. W. and R. M. Edwards as tending to show that they assumed ownership of the property on which the well in question was situated.

It was also error to exclude certified copies of assignments of overriding royalty interests in the property on which the well in question was situated, to Dr. Spear, trustee, which were signed by M. W. and R. M. Edwards. They were admissible against the defendants M. W. and R. M. Edwards to show that these defendants were dealing with the property as owners.

The judgments as to the defendants Spear and East Chicago Oil Association are affirmed; as to the defendants Peterson, Conrad, M. W. Edwards and R. M. Edwards, the judgments are reversed and the cause is remanded for a new trial.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, GALEN and FORD concur.