CLACK, RESPONDENT, v. CLACK ET AL., DEFENDANTS; MORRIS, APPELLANT.

(No. 7,298.)

(Submitted December 8, 1934. Decided January 5, 1935.)

[41 Pac. (2d) 32.]

554

*Mr. C. F. Morris, Mr. S. C. Ford* and *Mr. C. J. Dousman,* for Appellant, submitted an original and a reply and supplemental brief; *Mr. Morris* and *Mr. Ford* argued the cause orally.

*Mr. Max K. Kuhr,* for Respondent, submitted a brief and argued the cause orally.

## Opinion: PER CURIAM.

The Diamond Bar Ranches Company, a Montana corporation, was the owner of 2,600 acres of land in Blaine and Hill counties. Prior to July 27, 1929, the Capital Trust & Savings Bank, of St. Paul, foreclosed a mortgage describing these lands, which had been given by the Bear Paw Live Stock Company, predecessor of the Diamond Bar Ranches Company. The lands in question were sold on foreclosure sale for the sum of $25,053.50 to Weaver D. Clack on July 27, 1929. A sheriff's certificate of sale was issued to him in his name, as trustee for the Ranches Company, it being contemplated that it would redeem the property. Thereafter C. F. Morris, the president of the Ranches Company, entered into negotiations with Weaver D. Clack and H. Earl Clack, the latter plaintiff herein, to effect the redemption of the property. In order to redeem

it was necessary to raise $21,000. To accomplish that purpose, $8,000 was borrowed from a Malta bank upon the joint note of Weaver D. Clack and Mr. Morris, the former putting up collateral of the value of $8,000. Weaver Clack was then a stockholder and director of the Ranches Company, he having purchased in 1928, together with Mr. Morris, 200 shares of stock of the company from one Mrs. Morris. At about the same time, $12,500 was borrowed from the plaintiff. These funds were secured by the Ranches Company giving to plaintiff a note for $13,000, with an assignment of the sheriff's certificate of sale. The Ranches Company then received plaintiff's note for $12,500, which was negotiated at the First National Bank of Great Falls. The difference between the two notes was a bonus to be paid plaintiff for securing the loan. The remainder of the $21,000 necessary to redeem the property was apparently contributed by the Ranches Company.

At the time these negotiations were had it was apparently contemplated that the Ranches Company would obtain a loan of $20,000 from the Federal Land Bank at Spokane, the proceeds thereof to be used to repay the plaintiff his loan, the bonus, and the Malta bank loan. The land bank refused to loan to the Ranches Company, being a corporation, and in order to obtain the loan the company conveyed this real property to Weaver D. Clack by two quitclaim deeds, executed by Mr. Morris as president of the company. Thereafter, in September, 1929, Morris sold his stock in the company to Weaver Clack. Subsequently plaintiff was required to pay an unpaid balance on his note negotiated by the Ranches Company to the Great Falls bank. The application to the land bank was made for a loan of $20,000, as contemplated, but was approved for only $10,000. The proceeds of this loan were applied on plaintiff's note in the Great Falls bank. This then left the Ranches Company owing plaintiff a total sum of $2,936.53, consisting of the following items: Balance on principal of the note, $1,224; interest thereon, $137; bonus, $500; taxes paid on the lands, $639.58; and interest paid on the loan to the land bank, $435.95.

On June 2, 1930, Weaver Clack and wife executed a note to plaintiff for $10,000, with interest at eight per cent., payable June 2, 1931, secured by a mortgage executed by the makers of the note, describing a part of the lands theretofore transferred by the Ranches Company to Weaver Clack for the purpose of obtaining the federal loan. The lands were mortgaged as the individual property of Weaver D. Clack. The mortgage was recorded in Blaine county, where most of the lands were situated. It was subsequent to the mortgage to the land bank. Prior to the execution of the latter mortgage, Weaver Clack had made payments on the loan to the Malta bank, reducing that obligation to the sum of $1,600. Plaintiff, upon receipt of the Weaver Clack note and mortgage, assumed the residue of the obligation to the Malta bank and paid it. He, in this connection, asserted that the payments made by Weaver Clack to the Malta bank were accomplished by charging them to the company, which plaintiff in turn took over from the company, and that altogether there was owing to plaintiff on account of the Malta bank loan the sum of $7,543.95, principal and interest.

On February 17, 1931, Alice M. Morris (wife of C. F. Morris) obtained a judgment for $5,174.45 against the Ranches Company and Weaver D. Clack personally, in the district court of Hill county.

Plaintiff on November 19, 1932, commenced this action, the note being in default, to reform the Weaver D. Clack mortgage to include 440 acres of additional land which was conveyed by the Ranches Company to Weaver Clack, alleging that they were omitted from the mortgage, by mistake of the scrivener and by mutual mistake of the parties, and also sought foreclosure of the mortgage as reformed. The Ranches Company and Alice M. Morris, appellant herein, were joined as parties defendant; it being alleged that any interest claimed by them was subsequent and inferior to the lien of plaintiff's mortgage.

The defendant corporation defaulted, and its default was duly entered. Mrs. Morris answered, denying that Weaver Clack and wife were indebted, on the date of the execution of

the mortgage, to plaintiff, and denying that they were the owners and in possession of the lands described in the complaint and mortgage. She also denied all the allegations with reference to the reformation of the mortgage, and asserted that she claimed an interest in the land, and denied that her right was subsequent or inferior to the lien of plaintiff's mortgage.

Plaintiff alleged that he was entitled to recover the sum of $2,936.53 in connection with the Federal Land Bank loan, and also the sum of $7,543.95, arising out of the Malta bank loan. Appellant denied any rights in the plaintiff to recover upon the latter item.

While the action was instituted and pending in the district court of Blaine county, it was by stipulation of all the parties tried at Havre, in Hill county. When the cause came on for trial on April 29, 1933, plaintiff sought leave to amend his complaint to include in the mortgage an additional 440 acres of land in Hill county, which had not been described in the mortgage or complaint. He alleged that the latter tract had through inadvertence and mistake been omitted from the mortgage, and that it was the intention of all the parties to it that these lands should be described therein. The motion to amend was accompanied by a stipulation between the plaintiff and the defendant Ranches Company, then in default, that the amendment might be made. Over the objection of defendant Alice M. Morris the motion to amend was granted. It was, however, not engrossed in the complaint at the time. The motion to amend and the stipulation were not filed in Blaine county until six days after the decree was entered. In this connection it appears that subsequent to the filing of the transcript on this appeal, a certificate of the district court was here presented wherein it appeared that, when the motion was made, the trial judge took possession of the motion and stipulation and retained them until he decided the case, some eight months later.

The cause was tried before the court sitting without a jury. Findings of fact and conclusions of law in favor of the plaintiff and against the defendant Alice M. Morris were made.

The requested findings of the latter were refused. A judgment was entered reforming and foreclosing the mortgage, and awarding plaintiff the sum of $14,256, with attorneys' fees and costs. This judgment included both items which the plaintiff asserted were owing to him by Weaver D. Clack, together with interest. It was further adjudged that the claim of Mrs. Morris was subsequent and inferior to the lien of plaintiff's mortgage. It was directed that the lands be sold by the sheriff of Blaine county in one parcel. Thereafter Alice M. Morris made and filed a motion for new trial, which was denied. Her appeal is from the judgment.

The appellant's first specification of error is "that the court erred in granting plaintiff's motion to amend his complaint, over the objection of defendant Morris, so as to include 440 acres of land situated in Hill county." She contends that the court, in granting the amendment, worked a rank injustice by depriving her of a legal right (the right to levy execution upon the 440 acres, in satisfaction of her judgment).

Section 9187, Revised Codes 1921, gives the district court the power to allow such an amendment in the sound exercise of its discretion. In accordance with that statute, this court has frequently announced and adhered to the rule as laid down in *Buhler* v. *Loftus,* 53 Mont. 546, 165 Pac. 601, 606, as follows: "The power to allow the amendments at any stage of the trial is within the discretion of the trial court, and its action in this behalf is not subject to review by this court, unless it is affirmatively shown that it abused its discretion to the prejudice of the adverse party." (See *Morrison* v. *Concordia Fire Ins. Co.,* 72 Mont. 97, 231 Pac. 905; *Hardie* v. *Peterson,* 86 Mont. 150, 282 Pac. 494; *Backer* v. *Parker-Morelli-Barclay Motor Co.,* 87 Mont. 595, 289 Pac. 571.)

There is nothing in the record here, other than the bare assertion of appellant, to indicate that the court abused its discretion in allowing the amendment. There is no showing that appellant was taken by surprise or placed at a disadvantage by the granting of the amendment. She failed to ask for a continuance, or to make any suggestion whatsoever

that she was not prepared to proceed to trial on the facts presented by the amended complaint. Therefore she is not in a position now successfully to assert that the trial court abused its discretion in granting the motion to amend. (*Hardie* v. *Peterson*, supra; *Morrison* v. *Concordia Fire Ins. Co.*, supra; *Sandeen* v. *Russell Lumber Co.*, 45 Mont. 273, 122 Pac. 913.)

Appellant argues in her brief that "the written stipulation mentioned by counsel was not filed and nothing appears in the record indicating that it was presented to the court; the written motion was not presented and it was not possible for the court to determine exactly what lands were sought to be included in the amendment." She points out that the record affirmatively discloses that the motion to amend and the stipulation were not filed until six days after the decree was entered.

The motion, as filed, is set out in the transcript. It clearly describes the lands sought to be included in the amendment. Moreover, the certificate of the trial judge shows that the written motion and stipulation were presented to the court at the time when it granted the amendment. Thus it is manifest that any deficiencies in the record in this respect are amply supplied by the certificate of the trial judge. Appellant, apparently, does not question the right of plaintiff to make the certificate a part of the record here. Indeed, there can be little doubt that· it may properly be considered as a part of the record on this appeal. (Sec. 9749, Rev. Codes 1921; *Roberts* v. *Sinnott*, 54 Mont. 114, 169 Pac. 49.) It follows that there is no merit in appellant's specification of error in this particular.

Appellant's second specification of error is that the court erred in proceeding with the trial and entering a decree after granting plaintiff's motion to amend, the default of the defendant Ranches Company not having been entered after the complaint was amended. It is argued that after the amendment was made it should have been filed and served upon all of the defendants, and that they should have been given time to answer. Appellant also asserts that the secre-

tary of the Ranches Company had no authority to enter into the stipulation providing for the amendment, and that, as to the Ranches Company, the court was without jurisdiction to proceed. She contends that the amendment was one of substance, and that it operated to set aside the default of that company, and that it was thereafter entitled to time in which to answer.

There would, no doubt, be considerable force to this argument and the authorities cited by appellant, if the complaint were being made by the Ranches Company; however, that defendant has not appealed from the judgment; any error committed against it is not subject to review here, except in so far as such error might have affected the rights of appellant. (*Gregg* v. *Kommers,* 22 Mont. 511, 57 Pac. 92.)

The Ranches Company stipulated that the amendment might be made. It is manifest that nothing would have been gained by thereafter giving it an opportunity to answer the amended complaint. Obviously, it would have merely defaulted again. Hence we fail to see how appellant's rights could possibly have been prejudiced by the failure to give it an opportunity to answer the amended complaint. This is particularly true in view of the fact that appellant herself evidently did not deem it necessary to request a continuance, or to amend her answer in any manner.

Appellant places considerable reliance upon section 9134, Revised Codes 1921, which provides as follows: "If the complaint is amended, a copy of the amendments must be filed, or the court may, in its discretion, require the complaint as amended to be filed, and a copy of the amendments or amended complaint must be served upon defendants affected thereby. The defendant must answer the amendment or complaint as amended within twenty days after service thereof, or such other time as the court may direct, and judgment by default may be entered upon failure to answer as in other cases."

California has a statute identical to the above section. The supreme court of that state, in the case of *Lincoln County Bank*

v. *Fetterman,* 170 Cal. 357, 149 Pac. 811, 812, held that such statute "is but a direction to compel the joining of issues within a reasonable time, so as to expedite the trial of actions. It still rests within the sound discretion of the court as to whether any time shall be allowed to the defendant to answer, and whether or not time will be allowed will depend upon the nature and character of the amendment to the complaint." It is pointed out in that case that the principal elements to be considered are whether or not the court's discretion was abused and the defendant injured thereby; whether the amendment raises any new issue which the defendant is called upon to meet. If the amendment does not inject any new issue into the case, and the defendant is not taken by surprise, then it is not error for the court to fail to grant the defendant leave to answer the amended complaint. (Compare *Danielson* v. *Danielson,* 62 Mont. 83, 203 Pac. 506.)

In view of the circumstances heretofore outlined, we are of the opinion that the failure to file and serve the amendment and the stipulation was at most a mere technical error. The certificate of the trial judge shows that there was ample reason and justification for such delinquency. Moreover, there is no suggestion, either in appellant's brief or in the oral argument before this court, that she was in any manner injured by reason of the failure to file the motion or amendment.

Considerable stress is laid upon the fact that the complaint was not formally amended, although the court granted plaintiff's motion to amend. Appellant cites a great many authorities laying down the broad, general rule that a motion to amend is not an amendment, and that a motion presented to the judge is not a "filing" so as to make the motion a part of the records of the action. Among the authorities cited in support of this contention, we find the following quotation from 49 C. J. 548: "The rule is well settled that mere leave to amend does not of itself operate as an amendment, or raise any presumption that an amendment was made, as a party may have leave to amend and not choose to amend. * * * However, the weight of authority is that, if leave to amend

is granted and the cause tried as though the amendment had been made, even though it is best that actual amendment be made, the necessity for making it is obviated." (Citing numerous authorities.)

The California courts have held that where, pending the trial, the court permitted an amendment to the complaint and the case was tried upon the theory that the complaint was amended, failure formally to amend becomes immaterial. (*Parmenter* v. *McDougall,* 172 Cal. 306, 156 Pac. 460; *Hoffman* v. *Keeton,* 132 Cal. 195, 64 Pac. 264; *French* v. *McCarthy,* 125 Cal. 508, 58 Pac. 154; *Alameda County* v. *Crocker,* 125 Cal. 101, 57 Pac. 766.)

In the instant case it is clear that the cause was tried upon the theory that the complaint was amended in conformity to the court's order to that effect; this was certainly the understanding of the court and all the parties concerned. Therefore, in accordance with the foregoing authorities, we hold that the failure formally to amend the complaint does not constitute reversible error.

To warrant a reversal the error must be shown to have prejudiced the rights of the person who urges it. (*Backer* v. *Parker-Morelli-Barclay Motor Co.,* supra; *Finlen* v. *Heinze,* 32 Mont. 354, 80 Pac. 918; *Downs* v. *Cassidy,* 47 Mont. 471, 133 Pac. 106, Ann. Cas. 1915B, 1155.) Here there is no showing that appellant's rights were prejudiced by any of the alleged errors with respect to the granting of the motion to amend, the failure formally to amend, or the failure to file and serve the amendments upon the defendants.

Appellant next contends that the court erred in reforming the mortgage. She claims that plaintiff and his counsel "were guilty of gross negligence in the preparation of the mortgage and in describing the premises covered thereby, and by reason of such gross negligence plaintiff is not entitled to reformation." Therefore she argues that, since she obtained a judgment against Weaver Clack and the Ranches Company between the date of the execution of the mortgage and the time when the complaint was filed, her rights should not be

foreclosed because "plaintiff and his attorney did not exercise the degree of care required in the execution of the mortgage in question."

The plaintiff, his attorney, Mr. Kuhr, and Weaver Clack all testified that it was the intention of all the parties interested in the mortgage that all the lands belonging to the Ranches Company (approximately 2,600 acres) should be included in the mortgage. Mr. Kuhr prepared the mortgage; he testified that when he prepared it he thought that he had before him a description of all the lands of the Ranches Company, and the sheriff's certificate of sale which had been issued to Weaver Clack; and that it was his understanding that all those lands were to be included in the mortgage. In this he was corroborated by the testimony of Weaver Clack. Kuhr said that he instructed his stenographer to copy the descriptions of the lands into the mortgage; that she had, evidently by mistake, overlooked a portion of the lands described in the certificate of sale and abstracts. He also testified that he had never noticed the omission until a short time before this action was begun. Likewise, both plaintiff and Weaver Clack claimed that they had never noticed the mistake until shortly before this case was begun; that they had supposed that the mortgage described the entire 2,600 acres of land. All of the above testimony stands uncontradicted.

However, appellant argues that it clearly shows that all the parties to the mortgage were grossly negligent in failing to notice the incorrectness of the descriptions contained therein. This court has held that "where the parties to a contract agree upon the terms and conditions thereof and through mutual mistake the writing signed by them fails to express their agreement, or includes terms and conditions not agreed upon, a court of equity will reform it." (*Parchen* v. *Chessman,* 49 Mont. 326, 142 Pac. 631, 146 Pac. 469, Ann. Cas. 1916A, 681. See, also, sec. 8726, Rev. Codes 1921; *First State Bank* v. *Mussigbrod,* 83 Mont. 68, 271 Pac. 695; *Laundreville* v. *Mero,* 86 Mont. 43, 281 Pac. 749, 69 A. L. R. 416; *Thielbar Realties* v. *National Union Fire Ins. Co.,* 91 Mont. 525, 9 Pac. (2d)

469.) In the *Parchen Case* the court used the following pertinent language: "So it is held generally that where the parties intrust the duty of formulating a writing embodying their agreement to an attorney or scrivener, and he, by his own mistake or fraud, embodies in it stipulations and conditions other than those agreed upon, the party against whom it is sought to be enforced may have it reformed, though it was signed by him and delivered to the other party, without reading."

In this case the district court evidently found that the omission from the mortgage was the result of a mutual mistake by the parties thereto, and that the circumstances were such as to excuse any negligence of which they may have been guilty in this respect. (See *First State Bank* v. *Mussigbrod,* supra.) There is ample evidence in the record to sustain such a finding; in the absence of any evidence to the contrary its finding should not be disturbed. (*Nemitz* v. *Reckards,* ante, p. 229, 38 Pac. (2d) 980; *Vesel* v. *Polich Trading Co.,* 96 Mont. 118, 28 Pac. (2d) 858; *In re Columbus State Bank,* 95 Mont. 332, 26 Pac. (2d) 643; *Bitter Root Creamery Co.* v. *Muntzer,* 90 Mont. 77, 300 Pac. 251.)

The fact that appellant had obtained a judgment against the Ranches Company between the date of the execution of the mortgage and the filing of the complaint seeking to reform and foreclose the mortgage is of no consequence. "The lien of a judgment is a general lien and must yield to all prior equitable titles in others." (*Stockmen's Nat. Bank* v. *Hofeldt,* 54 Mont. 205, 169 Pac. 48, 49; *Vaughn* v. *Schmalsle,* 10 Mont. 186, 25 Pac. 102, 10 L. R. A. 411.) Accordingly, the lien of a judgment attaches only to the precise interest or estate which the judgment debtor actually and effectively has in the land; it cannot be made effectual to bind or to convey any greater or other estate than the debtor himself, in the exercise of his rights, could voluntarily have transferred or alienated. (34 C. J. 591, and cases cited.) This is obviously the result contemplated by section 9441, Revised Codes 1921, which provides in part as follows: "Upon a sale of real

property, the purchaser is substituted to and acquires the right, title, interest, and claim of the judgment debtor thereto." (*Short* v. *Karnop,* 84 Mont: 276, 275 Pac. 278; *MacGinnis Realty Co.* v. *Hinderager,* 63 Mont. 172, 206 Pac. 436.)

Since appellant was merely a general lienholder on whatever interest the Ranches Company had in the property, her rights did not stand in the way of the reformation of the prior mortgage. (*Feltham* v. *Blunck,* 34 Idaho, 1, 198 Pac. 763; *Emick* v. *Swafford,* 107 Kan. 209, 191 Pac. 490; *Beckius* v. *Hahn,* 114 Neb. 371, 207 N. W. 515, 44 A. L. R. 73; 53 C. J. 981, and cases cited. See, also, annotation upon this subject in 44 A. L. R. 103.)

Appellant asserts that the court erred in its findings of fact and conclusions of law and in entering a decree in favor of plaintiff. We have already partially disposed of the questions raised in this connection in our discussion of other assignments of error. Thus we have found that there was sufficient evidence to sustain the court's finding that there was a mutual mistake of the parties with respect to the descriptions of property in the mortgage, and that the instrument should be reformed to comply with their intentions. We have also found that appellant's rights were inferior in equity to the lien of plaintiff's mortgage.

Appellant contends that the property of the Ranches Company was transferred to Weaver Clack solely for the purpose of borrowing money from the Federal Land Bank to repay plaintiff his loan of $12,500, and that he (Weaver Clack) held the property as trustee for that purpose only. Therefore, she claims, he had no right or authority as trustee to mortgage the property to plaintiff. She further asserts that plaintiff knew this to be the situation when he took the mortgage. In support of her argument upon this proposition she cites numerous authorities holding, generally, that a trustee cannot deal with the trust property for his own benefit or for any other purpose unconnected with the trust. However, the court refused appellant's proposed finding of fact and conclusions of law to the effect that the lands were transferred

to Weaver Clack in trust for the sole purpose of procuring a loan to repay plaintiff the $12,500 which he had loaned the company. It also refused a proposed finding to the effect that the mortgage given by Weaver Clack and wife to plaintiff was an act not within the scope of the trust, and that plaintiff had full knowledge of the purpose of the trust, and therefore that the mortgage created no lien upon the trust property. Appellant predicates error upon the court's refusal to make these findings. The only question, then, is: Was there sufficient evidence from which the court could find—as it apparently did find—that the property was transferred to Weaver Clack for the purpose of borrowing money enough to repay all the obligations incurred in saving the property from the mortgage foreclosure by the St. Paul bank?

It is manifest that all the parties originally hoped that they would obtain enough money for that purpose by a single loan from the Federal Land Bank. But the evidence is somewhat conflicting as to whether Weaver Clack was empowered to borrow the money from the Land Bank only, and from no one else, and as to whether the only purpose of securing a loan was to repay plaintiff his $12,500, or to also repay the $6,000 obligation owing to the Malta bank. Weaver Clack testified that the lands were deeded to him for the purpose of raising money to pay off all the obligations incurred in saving the property from the foreclosure judgment of the St. Paul bank, and not merely to repay plaintiff the $12,500 which he has loaned the company. Mr. Morris, as a witness on behalf of appellant, testified to the contrary.

Plaintiff testified that at the time he took the note and mortgage from Weaver Clack, there was due and owing him (plaintiff) "a little over $10,000, and that this sum was owed to him from the Diamond Bar ranches or Weaver—all of this land out there." He further testified that the item of $7,543.95 represented the note which Weaver Clack gave with Mr. Morris to the Malta bank, that Weaver Clack had made payment upon that obligation by charging it to the company, and that he (plaintiff) took it over from the company. All

of this evidence was corroborated by the testimony of Weaver Clack. It is also important to note that by virtue of the sheriff's certificate of sale, the legal title to the lands in question was vested in Weaver Clack before the Ranches Company ever deeded the lands to him. Then the certificate was given to plaintiff as security for the loan of $12,500.

These facts, in conjunction with the testimony of plaintiff and Weaver Clack, furnish a substantial basis for the findings and conclusions made by the court. The fact that the evidence upon some phases of the case was conflicting is immaterial; if there is substantial evidence, conflicting or otherwise, to justify the court's findings, then they will not be disturbed on appeal. (*Nemitz* v. *Reckards*, supra; *Vesel* v. *Polich Trading Co.*, supra; *Greer* v. *Stannard*, 85 Mont. 78, 277 Pac. 622, 624, 64 A. L. R. 772.) In the case last cited, this court used language which is particularly pertinent here: "Granting that, if plaintiffs sustained their charges by a preponderance of the evidence, they should prevail, we are met, at every stage of the argument of counsel, by an adverse finding of the court, and the sole question here presented is as to the sufficiency of the evidence found in the * * * record before us, to support those findings. In other words, before the rules of law and of equity cited by plaintiffs can be applied, counsel for plaintiffs must show that the findings made are not supported by substantial evidence, and, in attempting to do so, they are faced by the well-established rules that this court enters upon a review of the evidence indulging the presumption that the judgment is correct and must draw from the evidence every legitimate inference to support that presumption and view the evidence in the light most favorable to the prevailing party, deeming every material fact established which the evidence tends to prove; that the decision of the trial court will not be reversed unless it is shown that the evidence strongly preponderates against it, and, if the evidence is conflicting but furnishes substantial ground for differing conclusions, the findings will not be disturbed."

In the instant case, the very most that can be said in appellant's favor is that the evidence, on certain points, is conflicting and furnishes substantial ground for differing conclusions. It follows that the court's findings and conclusions must be sustained.

Although appellant in her brief and argument makes some intimations of fraud on the part of plaintiff and Weaver Clack, she did not attempt to have the mortgage set aside on the ground of fraud, nor does her answer contain any defense of that nature.

Finally, appellant specifies as error the court's failure and refusal to find that the evidence justified the sale of the land in separate parcels. The evidence bearing upon this question is in direct conflict. Plaintiff adduced evidence tending to show that the property would bring more money if it were sold as one unit, rather than in parcels, and that by the sale thereof in parcels sufficient money could not be realized to pay off the amount of the mortgage. Appellant, on the other hand, produced evidence to the effect that it would be more desirable to sell the lands in parcels; that there were certain parties who would be interested in buying some parts of it. Here, again, there is a specific finding by the court that the lands should be sold as a single unit. There is sufficient evidence to sustain that finding. Therefore, in the light of the authorities to which we have already adverted, it is clear that the finding in this respect must be upheld. Furthermore, in the sale of property on foreclosure, the manner of conducting the sale is within the discretion of the trial court to direct, and in the absence of a showing of abuse of this discretion, the conclusion of that court will not be disturbed on appeal. (*Elston* v. *Hix*, 67 Mont. 294, 215 Pac. 657.)

After a careful consideration of the case as a whole, and of all the specifications of error interposed by appellant, we fail to find any reversible error.

Accordingly, the judgment is affirmed.

Rehearing denied February 18, 1935.